576 So.2d 975 (1991)
Sharon GARCIA, et al.
v.
ST. BERNARD PARISH SCHOOL BOARD.
No. 90-CC-1144.
Supreme Court of Louisiana.
March 11, 1991.
Rehearing Denied April 25, 1991.
John R. Rowley, Dist. Atty. and Robert A. Buckley, Asst. Dist. Atty., for St. Bernard Parish School Board, et al., defendants-applicants.
Leon A. Aucoin and Mary D. Sentenn, Aucoin, Unland & Eppling, for Pelican State Mut. Ins. Co., plaintiff-respondent.
James W. Brodtman for Sharon Garcia, Indiv. and on behalf of her minor daughter, Tina Garcia, plaintiff-respondent.
LEMMON, Justice.
The issue before the court is whether the insurance policy issued to the St. Bernard Parish School Board excluded coverage for an injury sustained by a high school cheerleader while performing an acrobatic stunt during a football game sponsored by the Board. The policy provision at issue stated that "the insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured".
*976 According to the petition, plaintiff's daughter, Tina Garcia, and two other cheerleaders, while cheerleading at a football game, attempted to perform a "basket toss", described as "a stunt in which two persons face each other and support a third person who is balanced on the arms between them and this third person is tossed directly into the air at which point the third person performs a front flip". Tina, acting as one of the tossers, was injured when the tossed cheerleader landed on Tina's knee.
Plaintiff filed this negligence action against the Board and its general liability insurer. The insurer moved for a summary judgment, asserting that the pertinent policy provision excluded coverage for Tina's injury incurred while participating in an exhibition of a sports nature sponsored by the Board. Attached to the motion was a conclusory statement by the Board's attorney that the policy did not provide coverage for an injury to a cheerleader at a football game. Plaintiff filed a countervailing affidavit stating the conclusion that at the time of her injury Tina "was not practicing for, nor participating, in any sports or athletic contest or exhibition".
The trial court granted the motion and dismissed the insurer from the action. The court of appeal, treating the Board's application for supervisory writs under La.Code Civ.Proc. art. 2201 as an appeal, denied the application in an unpublished opinion, effectively affirming the dismissal of the insurer. This court then granted the Board's application for certiorari. 565 So.2d 930.
In order to obtain a summary judgment, the mover must establish that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.Proc. art. 966. Here, neither the mover (the insurer) nor the opponent (the Board) attempted to establish undisputed facts by affidavits or discovery documents. Nevertheless, since there is no genuine dispute as to the material facts alleged in the petition on the manner in which the injury occurred, the critical issue is whether on the undisputed facts the Board is entitled to judgment under the policy exclusion as a matter of law.
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Capital Bank & Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. 13 J. Appleman, Insurance Law and Practice § 7427 (rev. ed. 1976). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Carney v. America Fire & Indemnity Co., 371 So.2d 815 (La.1979); W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986). The judicial responsibility in the interpretation of an insurance policy is the determination of the common intent of the parties. W. McKenzie & H. Johnson, supra.
The purpose of the sports contest exclusion is to except from liability coverage the risks which are normally encountered in practicing for or participating in a particular sports contest. Mountain States Mutual Casualty Co. v. Northeastern New Mexico Fair Association, 84 N.M. 779, 508 P.2d 588 (1973). The exclusion in this policy also extends to exhibitions as well as competitive contests.
In order to establish the applicability of the sports contest exclusion, the insurer has the burden of proving all of the following: (1) that the event in which the person was injured was a contest or exhibition; (2) that the contest or exhibition was of an athletic or sports nature; (3) that the contest or exhibition was sponsored by the named insured; and (4) that the injured person was practicing for or participating in the contest or exhibition at the time of *977 the injury.[1] Here, the insurer, while conceding that the injured cheerleader was not a participant in the football contest, argues that a cheerleader, while leading cheers at a football game, is participating in an exhibition and that cheerleading itself is of an athletic nature.
The insurer's argument is improperly focused. The risks normally encountered in a sports contest which the policy provision clearly intended to exclude under the circumstances of this case were injuries sustained in the football game. None of the cases reviewed from other jurisdictions involved an injury in an exhibition ancillary to the principal contest sponsored by the insured. While a school board typically sponsors additional activities incidental to football contests, such as performances by cheerleaders, bands, pep squads, flag squads, drill teams and the like, these groups are not participants in the football contest, and an injury to a member of these groups during a football game is not clearly within the contemplation of the policy provision.
Arguably, the policy provision may apply to injuries during cheerleading contests, either intramural or in competition among several schools, but here there was no contest and no winner to be chosen. Arguably, the provision may apply to injuries during an exhibition of cheerleading which is an independent event sponsored by the school, but here there was no showing that there was a cheerleading exhibition independent of the football contest.[2] Even if this cheerleading ancillary to the athletic contest could reasonably be interpreted as an exhibition contemplated by the policy, it could with at least equal reasonableness be interpreted to the contrary.
We conclude that the pertinent policy provision can reasonably be interpreted as not clearly excluding injuries sustained while cheerleading at a football game sponsored by the named insured. Any ambiguity must be construed in favor of coverage.
Accordingly, the judgments of the lower courts are reversed, the motion for summary judgment is overruled, and the case is remanded to the district court for further proceedings.
HALL, J., concurs with reasons.
MARCUS, J., dissents and assigns reasons and would grant a rehearing.
COLE, J., respectfully dissents and would grant a rehearing.
HALL, Justice, concurring.
I concur in the result, but disagree with some of the reasoning in the majority opinion.
Plaintiff was injured while participating in an exhibition sponsored by the named insured. The only question is whether cheerleading is an exhibition "of an athletic or sports nature."
Modern-day cheerleading normally involves some gymnastic or acrobatic activity, as illustrated by the activity in which plaintiff was engaged at the time she got hurt. Gymnastics and acrobatics are of an athletic nature. Yet, cheerleading is not ordinarily thought of as an athletic or sports activity as those terms are commonly *978 used. If you asked the parents of a high school student whether their son or daughter participated in school athletics or sports, I do not think they would answer, "Yes, my child is a cheerleader." The answer more likely would be, "No, but my child is a cheerleader at athletic and sports events." The terms of the policy, as applied to cheerleading, are ambiguous and any ambiguity in an insurance policy exclusion must be construed against the insurer. Accordingly, I agree that the insurance company's motion for summary judgment should have been overruled.
NOTES
[1] Decisions of other jurisdictions have focused primarily on the issue of whether the injured person was a participant. See 12 Couch on Insurance § 44A:117 (R. Anderson 2d ed. 1981); 7A J. Appleman, Insurance Law and Practice § 4514 (W. Berdal rev. ed. 1979).
[2] Moreover, even if this cheerleading were an exhibition contemplated by the policy, the record does not clearly establish that cheerleading is of an athletic or sports nature. The factor which makes consideration of the "athletic nature" requirement close is that the phase of the cheerleading in which plaintiff's daughter was participating at the precise time of her injury (an acrobatic stunt) was of an athletic nature. However, a cheerleader at a football game, for most of the game except for a few acrobatic stunts, is not generally engaged in activities of an athletic or sports nature. To accept the insurer's position, one would have to conclude that an injury to plaintiff's daughter was covered by the policy for most of the cheerleading during the game, but was not covered for the several acrobatic stunts. Having her step in and out of coverage during the course of cheerleading at the football game strains logical reasoning. In any event, cheerleading was not shown in this record to be an activity which is clearly athletic in nature.