940 So.2d 688 (2006)
Frank HENRY and Mary Henry, Individually and on Behalf of their Minor Children
v.
SOUTH LOUISIANA SUGARS COOPERATIVE, INC.
No. 06-CA-71.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
Rehearing Denied October 30, 2006.
*689 Robert I. Siegel, Brendan P. Doherty, Geiger, Laborde & Laperouse, L.L.C., Attorneys at Law, New Orleans, Louisiana, for Third-Party Defendant/Appellant, Audubon Insurance Company.
Rufus C. Harris, III, Alfred J. Rufty, III, Harris & Rufty, L.L.C., Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellee, South Louisiana, Sugars Cooperative, Inc.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and JAMES C. GULOTTA, Judge, Pro Tempore.
SUSAN M. CHEHARDY Judge.
This appeal arises in a personal injury suit, specifically out of a third party demand that seeks a determination of insurance coverage for the accident made the basis of the original suit. The trial court granted a summary judgment finding coverage under the policy of the third-party defendant. We affirm.
In the main demand, Frank Henry seeks damages for injuries he sustained on July 9, 2003 at the South Louisiana Sugars Cooperative, Inc. ("SLSC") facility in St. James Parish.[1] Henry, an employee of Quality Liquid Feeds, Inc., was loading molasses from a barge owned by SLSC onto an adjacent cargo barge. SLSC's barge had been moored in the Mississippi river in front of SLSC's facility since 1997, serving as a "dock barge" to assist in loading operations. The dock barge was secured to the riverbed by posts on both sides, making it stationary in lateral or forward movement, but allowing it to rise and fall with the level of the river. The cargo barge was connected to the SLSC barge by a gangplank affixed to the SLSC barge. Henry alleged the accident occurred as he was walking on the gangplank to the cargo barge, and the gangplank suddenly "slipped and dropped to the barge decking with great force," causing Henry to fall onto his back on the cargo barge.
At the time of the accident, SLSC was insured under a comprehensive general liability ("CGL") policy issued by Audubon Indemnity Company ("Audubon").[2]
Audubon sent a letter to SLSC denying coverage based on a watercraft exclusion in the CGL policy. As a result, SLSC filed a third party demand against Audubon, alleging that Audubon's policy provided coverage to SLSC for the Henry claims and that Audubon acted arbitrarily and in bad faith in denying coverage.
Audubon and SLSC filed cross-motions for summary judgment. Audubon sought summary judgment dismissing the claims against it, on the ground that the Audubon policy excludes the claims and liabilities associated with the alleged accident and injuries of Frank Henry. Audubon asserted its coverage denial was based on a clear and unambiguous watercraft exclusion in its policy, and submitted evidence demonstrating that the barge was floating in the Mississippi River at all times pertinent.
*690 SLSC's motion for summary judgment sought a ruling that Audubon owes it coverage and a defense, as well as attorney's fees and damages pursuant to La.R.S. 22:658 and 22:1220. SLSC contended the watercraft exclusion does not apply, because the policy has an exception to the watercraft exclusion where the watercraft is "ashore on premises owned or rented by the insured." SLSC argued that the vessel at issue was "ashore" at premises belonging to the insured at the time of the accident, since it was permanently moored and was connected to shore by a conveyor affixed to the shore that extends out over the water to the barge.
The trial court granted both motions for summary judgment in part and denied both in part. The court granted Audubon's motion with respect to statutory penalties, but denied it as to the exclusion, finding coverage under Audubon's policy. The court granted SLSC's motion for summary judgment as to the coverage issue, but denied it as to penalties and attorney's fees. The court did not issue reasons for judgment. Audubon has appealed the ruling.[3]
On appeal Audubon asserts the trial court erred in denying Audubon's motion for summary judgment and in granting summary judgment in favor of SLSC because the barge upon which Frank Henry was allegedly injured was a "watercraft," and the watercraft, which was floating in the Mississippi River and surrounded by water, was not "ashore on premises" owned or rented by SLSC.
The water craft exclusion contained in the Audubon policy provides as follows, in pertinent part:[4]
2. Exclusions
This insurance does not apply to:
* * *
(g) Aircraft, Auto or Watercraft
"Bodily Injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
This exclusion does not apply to: (1) A watercraft while ashore on premises you own or rent.
There is no dispute that the barge is a watercraft or that the accident arose out of its "ownership, maintenance, use or entrustment to others." At issue is whether exception (1) to the exclusion applies because SLSC's barge was "permanently moored" and was used as a dock by SLSC.
Audubon contends that the "permanent mooring" is irrelevant, because the dock barge was floating on the Mississippi River, with water around all four sides of it. Audubon argues the barge cannot be considered to be "ashore" because the barge was in the river, and "ashore" equates to "on land." Alternatively, if any connection between the barge and land can be considered to make the barge "ashore," Audubon asserts the barge nevertheless was not *691 "ashore on premises" owned by or rented to the insured, because only the state owns the bottoms of navigable waterways.
SLSC argues the trial court was correct in determining that coverage existed under the Audubon policy. SLSC contends the court implicitly found that the vessel was "ashore" when it was serving as a dock while permanently affixed at the shore of the insured's premises without having been moved for at least seven years.
Alternatively, SLSC argues that the exclusion in the Audubon policy is ambiguous as to the meaning of "ashore," because Audubon did not define "ashore" in its policy, and dictionaries define "ashore" to include being "along," "alongside of," and "adjacent to" the shore. SLSC argues the variety of meanings mandates an interpretation favoring the insured.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La.C.C.P. art. 966(B). An appellate court reviews a grant or denial of a motion for summary judgment de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
Thus, we ask the same questions as the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Robinson v. Heard, 01-1697, pp. 3-4 (La.2/26/02), 809 So.2d 943, 945.
The rules for interpretation of insurance policies were summarized by the Louisiana Supreme Court in a recent case, as follows:
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. [Citations omitted.]
Bonin v. Westport Ins. Corp., XXXX-XXXX (La.5/17/06), 930 So.2d 906, 910-11.
We find a variety of definitions of "ashore": "ashore . . .: on or to the shore"[5]; "ashore . . . 1. To or onto the shore: driven ashore by the wind. 2. On land: spent the day ashore."[6]
*692 Black's Law Dictionary does not define "ashore," but defines "shore" as follows:
Shore. Strictly and technically, lands adjacent to the sea or other tidal waters. The lands adjoining navigable waters, where the tide flows and reflows, which at high tides are submerged, and at low tides are bare. . . . The space bounded by the high and low water marks. . . . And this is also true even though the lands may lie along nonnavigable bodies of water.
Under the civil law the "shore line" boundary of lands adjoining navigable waters is the line marked by the highest tide.
In connection with salvage, "shore" means the land on which the waters have deposited things which are the subject of salvage, whether below or above ordinary high-water mark.
Black's Law Dictionary 1236 (5th ed.1979).
The meaning of "ashore" as it is used in the standard exception to the watercraft exclusion has been little-discussed in jurisprudence. The parties cite cases that favor the interpretations of both sides.[7]
In Blair v. Suard Barge Services, Inc., 2004 WL 325428 (E.D.La.2004), where the watercraft exclusion was applied, the barges were many feet from the shore. In H.C. Price Co. v. Compass Ins. Co., 483 F.Supp. 171, 174-175 (N.D.Tex.1980), the court found a vessel that was partially out of the water and propped up on a ramp on the side of a bayou was "ashore."
In Liquor Liability Joint Underwriting Assoc. of Mass. v. Long, 1993 WL 818638 (Mass.Super.), and Nahan v. Pan American Grain Mfg. Co., Inc., 62 F.Supp.2d 419 (D.P.R.1999), the exception to the watercraft exclusion was held to apply where the injuries occurred at piers that were considered premises owned or rented by the insureds.
SLSC points out that in this case, the barge was the dock. SLSC argues that because the Audubon policy does not define "ashore," the word is susceptible of several interpretations, making the policy ambiguous and mandating an interpretation favoring coverage. Audubon asserts that "ashore" is not ambiguous because it is part of the phrase "ashore on premises" and that the only interpretation of the full phrase must be that the vessel is on land that is owned or rented by the insured.
Unambiguous provisions in the insurance contract limiting liability must be given effect. However, if the language of the exclusion is ambiguous and thus subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. [Citations omitted.]
Lantier v. Aetna Cas. & Sur. Co., 614 So.2d 1346, 1354 (La.App. 3 Cir.1993).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Equivocal *693 provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La.1991). The insurer has the burden of proving that a policy exclusion precludes recovery. Id.
We find that the phrase "ashore on premises" is ambiguous. Hence, we agree with the trial court's conclusion that SLSC was entitled to summary judgment. Accordingly, the judgment is affirmed. Costs of this appeal are assessed against the third-party defendant-appellee, Audubon Insurance Company.
AFFIRMED.
NOTES
[1] Frank Henry's wife, Mary Henry, is also a plaintiff, but for ease of reference we speak of Frank Henry as if he were the only plaintiff.
[2] SLSC also had a protection and indemnity ("P & I") policy issued by Westport Insurance Company ("Westport"), which insured SLSC as owner of the barge involved here, described in the Westport policy as "1937 155' Dock Barge."
[3] We note the court rendered two judgments. The first was signed on December 6, 2005. The second was signed on December 13, 2005. The second judgment amended the first with respect to Audubon's motion, specifying that Audubon's motion was granted with respect to statutory penalties. Because the second judgment was rendered within the period for applying for a new trial, it could properly be substituted for the first judgment and is effective. See La. C.C.P. arts.1951, 1971, 1974.
[4] The exclusions are in subsection 2 of Section ICoverages, Coverage A. Bodily Injury and Property Damage Liability.
[5] Webster's Ninth New Collegiate Dictionary 107 (Merriam Webster 1983).
[6] American Heritage® Dictionary of the English Language (4th ed.2003). Retrieved September 4 2006 from http://www.thefree dictionary.com/ashore.
[7] We note, in passing, that recent legislation now permits the previously forbidden practice of citing unpublished decisions. Uniform Rules of Louisiana Courts of Appeal, Rule 2-16.3(C) states, "Opinions and dispositions marked `Not Designated for Publication' shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Opinions marked `Not Designated for Publication' shall be filed in the clerk's office as public records." However, by Act 644 of 2006 (eff. August 15, 2006), the Louisiana Legislature enacted La.C.C.P. art. 2168, which requires that unpublished opinions by the Supreme Court and courts of appeal be posted on the Internet websites of such courts, and that such opinions may be cited as authority.