**NAUTILUS INSURANCE COMPANY,**
Respondent,

v.

**JESSE JAMES FESTIVAL,**
**INC., Defendant;**

Gary Newlun, Appellant.

No. WD 68956.

Missouri Court of Appeals,
Western District.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2008.

Application for Transfer Denied
Dec. 16, 2008.

Bruce B. Brown, Kearney, MO, for appellant.

Michael D. Hufft, Kansas City, MO, for respondent.

Before DIV I: LOWENSTEIN, P.J., SPINDEN and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

This case involves an appeal from the grant of summary judgment in favor of an insurance company, Nautilus Insurance Company ("Nautilus"), in its action seeking a declaratory judgment that it had no duty to defend or indemnify its insured, the Jesse James Festival Committee ("JJF"), in an action for personal injury filed by the appellant, Gary Newlun ("Newlun"), for injuries he sustained as a result of his participation in a rodeo sponsored by JJF. Nautilus moved for summary judgment contending that any one of four different provisions in its policy excluded Newlun's claim and, therefore, Nautilus had no liability. The trial court granted summary judgment in favor of Nautilus. The issue before this court is whether Nautilus had any liability under its commercial general liability policy ("the CGL") with regard to Newlun's claims.

## I. FACTUAL BACKGROUND

In July 1999, JJF renewed its CGL policy with Nautilus and purchased a Special Events Liability Endorsement for a rodeo to be held September 17–19, 1999, on the JJF premises. The policy declaration was modified by Form S 150, Coverage Part Declarations that identified the forms and endorsements applying to the coverage and incorporated into the policy. These *exclusions* included:

(1) Form CG 21 01 (11/85), entitled "EXCLUSION—ATHLETIC OR SPORTS PARTICIPANTS" (hereinafter "Participant Exclusion"), excluded from coverage " 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor;"

Form S009 (02/95), entitled "EXCLUSION—TOTAL LIQUOR LIABILITY" (hereinafter "Liquor Liability Exclusion") excluded from coverage " 'bodily injury' ... for which indemnitee may be held liable by reason of: (1)[c]ausing or contributing to the intoxication of any person; [or] (2)[t]he furnishing of alcoholic beverages to a person under the

legal drinking age or under the influence of alcohol;"

Form S 066 (04/97), entitled "EXCLU-SION—UNSCHEDULED ACTIVI-TIES AND EVENTS" (hereinafter "Unscheduled Events Exclusion") excluded from coverage " 'bodily injury' . . . for activities or events sponsored by the insured and not scheduled by endorsement or shown in the Declarations."

The policy was in effect from July 1, 1999, to July 1, 2000.

On September 10–12, 1999, JJF and the Kearney Optimist Club sponsored a rodeo on the JJF property in Kearney, Missouri. The "Bull Bash," produced by Rockin' K Productions, included an event called the "Circle of Fear," in which members of the audience were given the opportunity to don a flack jacket, sign a release, and enter a circle chalked in the rodeo arena whereupon a rodeo bull was released into the arena. The last participant remaining in the chalk circle would receive a $100 prize.

Gary Newlun attended the Bull Bash on September 10, 1999, participated in, and won, the Circle of Fear. He returned to the rodeo on September 11, 1999, and, again, participated in the Circle of Fear. On this day, however, Newlun was not as successful; he was "butted, kicked and thrown twenty feet" by the bull. As a result, Newlun sustained serious physical injuries.

In September 2004, Newlun brought suit against JJF and the Kearney Optimist Club [1] for damages arising out of his participation in the September 11 event. In his petition, Newlun asserted that defen-dants sponsored the event and knew or should have known that the event in which he participated was likely to result in seri-ous physical injury. He alleged, further, that the defendants "plied" him with beer for two hours in an effort to persuade him to participate in the event, and, therefore, his judgment was impaired when he signed the release. Newlun concluded that his injuries arose from the defendants' negligence.

JJF tendered Newlun's claim to its insurer, Nautilus, requesting that, under the CGL, Nautilus had a duty to defend and indemnify JJF against the claim. Nautilus refused to defend or indemnify, claiming, any coverage for Newlun's claim, first was excluded by the Participant Exclusion and the Liquor Liability Exclusion, and, second, was outside the Special Event Liability Endorsement.

Newlun's claim went to trial in December 2005. Although JJF did not appear, Newlun presented evidence. Newlun and JJF eventually agreed to limit recovery to "specified liability insurance coverage" pursuant to Section 537.065.[2]

Just before Newlun's cause came to trial, Nautilus filed this suit against JJF and Newlun seeking a declaratory judgment that Nautilus had no duty to indemnify or defend JJF in Newlun's action. Nautilus moved for summary judgment pointing to the Sports Participant Exclusion, Liquor Liability Exclusion, Unscheduled Events Exclusion, and the additional exclusions of the Special Event Liability Endorsement to support its contention that it did not have any duty to indemnify or defend JJF in the underlying negligence suit. Newlun filed a cross-motion for summary judgment.

---

1. Rockin' K Productions had, sometime previous, declared bankruptcy and was not joined as a defendant in the suit.

2. Under Section 537.065, the claimant and the tort-feasor may agree to limit recovery to the proceeds of the insurance recovery, releasing the tort-feasor from further recovery.

The trial court granted summary judgment in favor of Nautilus, without specifying the basis for the grant, and denied Newlun's motion for summary judgment. This appeal followed.[3]

## II. DISCUSSION

This court reviews a grant of summary judgment *de novo* as a question of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when a party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). "Where, as here, the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the summary judgment if it is appropriate under any theory." *Baldwin v. Jim Butler Chevrolet, Inc.*, 926 S.W.2d 555, 557 (Mo.App.1996). "Further, a trial court's order is presumed to have based its decision on the grounds specified in Respondents' motions if the trial court's order does not set forth its reasoning." *Moore Equip. Co. v. Halferty*, 980 S.W.2d 578, 581 (Mo.App.1998). Accordingly, although Nautilus claims that coverage was excluded under any one of four different exclusions in the CGL, this court need only find one of the policy exclusions applicable to the claim to uphold the grant of summary judgment.

This court first notes that Newlun does not contend that JJF had coverage for the incident under the Special Event Endorsement. The Special Event Endorsement provided coverage for a rodeo to be held on September 17–19, 1999. JJF, in fact, held the rodeo a week early and did not update its coverage under the Special Event Endorsement. Accordingly, Newlun does not contend that the Special Event Endorsement applied to his claim but, rather, Nautilus was liable under the CGL.

Newlun contends that his claims are not excluded under the CGL, and are, therefore, covered, because he was not injured in an event "sponsored" by JJF. He points out that the term "sponsor" is not defined in the insurance policy and therefore, he argues, the court should look to the common usage, or, specifically, the Funk & Wagnall's Standard Encyclopedic Dictionary 660 (1972) that provides "vouch for" as one definition of sponsor. Inexplicably, Newlun then concedes that, under this definition, that JJF likely sponsored the Bull Bash rodeo but that JJF did not "vouch for" the Circle of Fear in which Newlun was injured.

In interpreting an insurance contract, this court will give the contract its plain meaning. *Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976*, 123 S.W.3d 183, 186 (Mo.App.2003). An insurance policy will only be found to be ambiguous where "there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 324 (Mo.App.2002). "An insurance policy, however, is not ambiguous merely because the parties disagree over its meaning." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo.App.2007). Whether an insurance contract is ambiguous is a matter of law and a court will not " 'use its inventive powers to create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage.' " *Melton*, 75 S.W.3d at 325 (quoting *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 830 (Mo.App.1998)). Moreover, a court will give the terms used in the policy the

---

3. JJF did not appeal the judgment.

"meaning which would normally be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App.1993).

This court cannot conclude that the term "sponsor" as used in the policy is ambiguous. Nor can this court endorse the limited meaning Newlun would give the term. In a battle of the dictionary references, Nautilus points to the Random House Webster's College Dictionary definition of "sponsor" as to pledge or provide money for an undertaking or event and contends that this definition comports with JJF's use of the word in its Bull Bash advertising and Nautilus's use of the word in the CGL. Under this definition, JJF provided the funds to hire Rockin' K Productions to produce the Bull Bash rodeo, thereby providing money for the event. In that, as part of the Bull Bash, Rockin' K presented the Circle of Fear, JJF, by extension, was a sponsor of the Circle of Fear. Newlun does not point to any case holding that the term "sponsor" in an insurance policy is ambiguous or any precedent finding that an insured sponsored the overall event but not a specific activity or event within the overall production. The exclusions employing the term will be given their plain meaning to determine whether the provisions exclude Newlun's claim.

The court will first look to the Participant Exclusion to determine whether its provisions apply to Newlun's claim. Other courts addressing similar exclusionary language have found that, to show that the insurer has no liability under the exclusion, the insurer must establish that: (1) the event in which the individual was injured was a contest or exhibition; (2) the contest was of an athletic or *sports nature;* (3) the named *insured sponsored* the contest; and

(4) the *injured person* was practicing for or *participating* in the *contest* at the time of the injury. *See Zurich Reinsurance (London) Ltd., v. Westville Riding Club, Inc.*, 82 F.Supp.2d 1254, 1256 (E.D.Okla. 1999); *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So.2d 95, 98 (Fla. App.1991).

Here, the Circle of Fear was a contest in that Newlun was competing with others to win $100 by remaining within the chalk circle when all other participants were outside the circle. "Sport" commonly refers to physical exertion or recreation engaged in for pleasure. *See* WEBSTER's NINTH NEW COLLEGIATE DICTIONARY 283 (1986). Arguably, a participation in the Circle of Fear would require physical exertion for the pleasure of the competition and the possibility of winning the prize. JJF provided the funds to hire Rockin' K Productions to produce the Bull Bash on JJF property, and the Circle of Fear was an event at the Bull Bash. Advertising posters for the Bull Bash noted that the event was "sponsored by the Jesse James Festival Committee." Accordingly, JJF sponsored the event in which Newlun was injured. Finally, Newlun sustained injuries as a result of his participation in the event.

The Participant Exclusion of the policy applies to Newlun's claim and Nautilus did not have any liability to defend and indemnify JJF in Newlun's personal injury action. Exclusion of liability under the Participant Exclusion was one of the grounds raised in Nautilus's motion for summary judgment that was granted by the trial court without explication of the basis for the grant. Accordingly, the trial court's grant of summary judgment in favor of Nautilus was proper.

In that the grant of summary judgment in favor of Nautilus was proper, this court need not address Newlun's next point that the trial court erred in not granting summary judgment in his favor.

In his final point, Newlun claims that the grant of summary judgment was improper because there were genuine issues of material fact at issue. This claim is in contravention of Newlun's position at trial in his motions for summary judgment, and his assertion on appeal, in his second point on appeal, that there were no genuine issues of material fact and he was entitled to judgment as a matter of law. "As a general rule, 'a party cannot try his case on one theory in the trial court and, if unsuccessful, rely upon a different theory on appeal.'" *In re Marriage of Dooley*, 15 S.W.3d 747, 753 (Mo.App.2000) (quoting *Anderson v. Anderson*, 869 S.W.2d 289, 292 (Mo.App.1994)). Accordingly, this claim is not preserved for appellate review and is summarily denied.

The judgment is affirmed.

All Concur.