**VOLUSIA COUNTY CATTLEMEN'S ASSOCIATION, INC., Plaintiff,**

v.

**WESTERN WORLD INSURANCE COMPANY, Defendant.**

**Case No: 6:15–cv–1239–Orl–41DAB**

United States District Court,
M.D. Florida,
Orlando Division.

Signed 10/27/2016

Filed 10/28/2016

Darren Jay Elkind, Paul Elkind & Branz, PA, Deltona, FL, for Plaintiff.

Chris Ballentine, Fisher Rushmer, P.A., Orlando, FL, for Defendant.

## ORDER

CARLOS E. MENDOZA, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 31) and Plaintiff's Amended Motion for Summary Judgment (Doc. 39). The parties filed their respective responses in opposition. (Pl.'s Resp. to Def.'s Mot. Summ. J., Doc. 36; Def.'s Resp. to Pl.'s Mot. Summ. J., Doc. 38). Defendant also filed a Reply to Plaintiff's Response (Doc. 41). For the reasons set forth herein, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Amended Motion for Summary Judgment will be denied.

### I. BACKGROUND

This is a declaratory judgment action brought by Plaintiff, Volusia County Cattlemen's Association, Inc., against its insurer Western World Insurance, Company, seeking a declaratory judgment that Defendant has a duty to defend and indemnify Plaintiff in an underlying tort suit. (*See generally* Compl., Doc. 2). Plaintiff also seeks an award of attorney's fees. The parties agree that none of the facts are disputed and that the Court's interpretation of two policy exclusions will determine the issue of coverage and thus whether the insurer had a duty to defend and indemnify Plaintiff in the underlying lawsuit.

Defendant issued Plaintiff a commercial general liability insurance policy, which was in effect during the relevant time period. (Compl. ¶ 4; *see also* Commercial Lines Policy, Doc. 2–1, at 2).[1] The policy requires Defendant to defend and indemnify Plaintiff against claims of bodily injury or property damage to which the insurance applies. (Commercial General Liability Coverage Form, Doc. 2–1, at 31). The policy explicitly states that the insurer has no duty to defend claims that are not covered under the policy. (*Id.*). Included in the policy are multiple exclusions and conditions that limit coverage. (Common Policy Conditions, Doc. 2–1, at 7–30). The parties dispute the applicability of two exclusions in particular: the "Rodeo Performance Limitation Endorsement," ("Rodeo Performance Exclusion," Doc. 2–1, at 26), and the "Athletic or Sports Participants Exclusion," ("Athletic Exclusion," Doc. 2–1, at 25).

On May 12, 2015, Desiree Cicero brought the underlying tort suit against Plaintiff in the Seventh Judicial Circuit in and for Volusia County, Florida, seeking to recover for personal injuries she sustained while attending Plaintiff's annual "Cracker Day." (*See generally* Cicero's Original Compl., Doc. 2–1, at 55). Cicero's Complaint alleged that every year, for a fee, members of the public can attend Plaintiff's Cracker Day, which is a day-long affair with rodeo-type exhibitions and other amusements. (*Id.* at 56). As set out in Cicero's Complaint, one of the regular events at Cracker Day is the "cash grab"—an event where those attending Cracker Day are invited to enter a fenced area populated by full grown bulls with money attached to their bodies. (*Id.*). Those participating attempt to grab money from the bulls who are not in any way restrained or controlled.[2] (*Id.*). On April 27, 2013, Cicero attended the Cracker Day and participated in the cash grab. (*Id.*). While participating, Cicero was "violently gored by one of the three roaming bulls, causing serious and permanent injury." (*Id.* at 57). Cicero further alleged that Plaintiff breached its duty of care "by allowing participants to interact with unrestrained bulls in an attempt to grab cash," failing to take precautions, and failing to warn of the potential dangers associated with participating in the cash grab. (*Id.*).

Cicero's Complaint was presented to Defendant. (Compl. ¶ 6). Defendant denied coverage. (*Id.*; *see also* W. Letter Den. Coverage, Doc. 2–1, at 60). In doing so, Defendant explicitly declined to pay "for any judgment or settlement" or to pay for an attorney to defend the suit brought by Cicero. (W. Letter Den. Coverage at 60–61). Defendant stated in the letter that the denial was based on the applicability of two policy exclusions—the "Rodeo Performance Exclusion" and the "Athletic Exclusion." (*Id.* at 60–63). Thereafter, Plaintiff instituted this suit, seeking a declaratory judgment as to its rights under the insurance policy and attorney's fees.

---

1. Where a docket entry or attachment contains multiple documents, pinpoint citations refer to the electronic page number.

2. Discovery later revealed additional facts about the cash grab, some of which differed from the description as set out in Cicero's Complaint. For example, during depositions, it was described as an event where participants enter the arena, and a steer, rather than a bull, is released with a ribbon, rather than money, tied to its horn; the participants try to take the ribbon from the steer's horn, and the first person to grab the ribbon is the winner and gets a $50.00 cash prize. (Lefils Dep., Doc. 32–3, at 35:1–24, 36:14–20, 37:14–38:4, 39:18–20, 43:5–44:19; Cicero Dep., Doc. 32–1, at 19:13–18, 20:24–22:19, 22:25–23:8). However, because, as discussed below, this Court may only rely upon the allegations of the underlying complaint in determining whether the insurer had a duty to defend, the Court will focus on the facts as alleged in Cicero's Complaint.

(Compl. ¶¶ 11, 14). The parties have now filed cross-motions for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. ANALYSIS

### A. Insurance Contract Interpretation

■■■ It is undisputed that Florida law governs the interpretation of the insurance policy at issue. In Florida, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001); *see also Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538–39 (11th Cir. 1995) ("Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court."). "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Westport Ins. Corp. v. VN Hotel Grp., LLC*, No. 6:10–cv–222–ORL–28KRS, 2011 WL 4804896, at *2 (M.D. Fla. Oct. 11, 2011), *aff'd*, 513 Fed.Appx. 927 (11th Cir. 2013) (quotation omitted). "The scope and extent of insurance coverage is determined by the language and terms of the policy." *Id.* (quotation omitted).

■■■ "[T]he Florida Supreme Court has made clear that the language of the policy is the most important factor." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quotation omitted). Additionally, "insurance contracts are construed according to their plain meaning." *Id.* at 1274 (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc.*, 913 So.2d at 532 (quotation omitted).

■■■ Where the "relevant policy language is susceptible to more than one rea-

sonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Westport Ins. Corp.*, 2011 WL 4804896, at *2 (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000)). In order for an insurance contract to be found ambiguous, "[t]here must be a genuine inconsistency, uncertainty, or ambiguity in meaning that remains after resort[ing] to the ordinary rules of construction." *Valiant Ins. Co. v. Evonosky*, 864 F.Supp. 1189, 1191 (M.D. Fla. 1994) (quotation omitted). "[A] court may *not* rewrite the policy or add meaning to create an ambiguity." *Id.* Additionally, the mere fact that policy language requires interpretation does not render the language ambiguous. *Id.* "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Westport Ins. Corp.*, 2011 WL 4804896, at *2 (quoting *Auto-Owners Ins. Co.,* 756 So.2d at 34). Moreover, "[e]xclusionary clauses are construed even more strictly against the insurer than coverage clauses," and the insurer has the burden of demonstrating that an exclusion in a policy applies. *Id.* (quotation omitted).

## B. Duty to Defend

▮▮▮▮ "An insurer's duty to defend is distinct from and broader than the duty to indemnify." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (quotation omitted). Whether an insurer has a duty to defend "is determined by examining the allegations in the complaint filed against the insured." *Id.*; *see also Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F.Supp.3d 1283, 1293 (S.D. Fla. 2015) ("[A]n insurer's duty to defend its insured against legal action depends solely on the facts and legal theories alleged in the pleadings and the claims against the insured." (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)); *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F.Supp.3d 1370, 1374 (S.D. Fla. 2015) ("To determine whether [the insurer] had a duty to defend [the insured], the Court looks *only to the allegations in the Underlying Complaint* and the terms of the Policy." (emphasis added) (citing *Jones v. Fla. Ins. Guar. Ass'n*, 908 So.2d 435, 442–43 (Fla. 2005)).[3] As a result, "[a]n insurer may be required to defend a suit even if the later facts show there is no coverage." *Orlando Nightclub Enters., Inc. v. James River Ins. Co.*, No. 6:07–cv–1121–ORL–19KRS, 2007 WL 4247875, at *9 (M.D. Fla. Nov. 30, 2007).

▮▮▮▮ When the complaint "alleges facts which fairly and potentially bring the suit within policy coverage," the insurer

---

**3.** Defendant contends that that this Court may look to uncontroverted facts outside the underlying complaint to determine that there is no duty to defend, citing *Nationwide Mutual Fire Insurance Co. v. Keen*, 658 So.2d 1101 (Fla. 4th DCA 1995) and *Underwriters at Lloyds London v. STD Enterprises*, 395 F.Supp.2d 1142 (M.D. Fla. 2005). However, the Eleventh Circuit has acknowledged that *"Keen* and *Underwriters* are best seen as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage" and that "[b]oth of these cases depart from the general principle of determining the duty to defend only from the allegations in the complaint." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed.Appx. 777, 785–86 (11th Cir. 2008). Further, "[a]part from the situations in *Keen* and *Underwriters*, Florida courts have focused exclusively on the facts of the complaint in determining the duty to defend, regardless of post-complaint developments." *Id.* at 786. *Keen* and *Underwriters* are distinguishable from the instant case. Though additional evidence outside of the underlying complaint might bolster Defendant's argument, consideration of such evidence and departure from the general principle is not warranted here.

must defend the suit on behalf of the insured. *Lime Tree Vill. Cmty. Club Ass'n*, 980 F.2d at 1405. "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Id.* However, "if the pleadings show that there is no coverage or that a policy exclusion applies to bar coverage, the insurer has no duty to defend." *Goldberg*, 143 F.Supp.3d at 1293–94 (citing *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F.Supp.2d 1328, 1332 (S.D. Fla. 2011), *aff'd*, 469 Fed.Appx. 722 (11th Cir. 2012)).

### 1. The Athletic or Sports Participants Exclusion

 As a preliminary matter, neither party contends that the Athletic Exclusion is ambiguous and therefore unenforceable. Rather, the parties dispute whether the Athletic Exclusion applies to claims arising from Cicero's participation in the cash grab. Defendant argues that Cicero's participation in the cash grab falls under the Athletic Exclusion, thus barring coverage and relieving it of its duty to defend and indemnify Plaintiff. The Athletic Exclusion provides: "This insurance does not apply to any claim arising from practicing for or participating in any event of a sporting or athletic nature." (Athletic Exclusion at 25).

Defendant cites a four-part test that lays out the requirements for proving that a sports or athletic exclusion applies: (1) "the event in which the person was injured was a contest or exhibition;" (2) "the contest or exhibition was of an athletic or sports nature;" (3) "the contest or exhibition was sponsored by the named insured;" and (4) "the injured person was practicing for or participating in the contest or exhibition at the time of the injury." *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975, 976–77 (La. 1991). Other jurisdictions, including Florida courts, have applied this test when interpreting similar exclusions. *See, e.g., Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So.2d 95, 97–98 (Fla. 5th DCA 1991); *Sciolla v. W. Bend Mut. Ins. Co.*, 987 F.Supp.2d 594, 601 (E.D. Pa. 2013); *Zurich Reinsurance (London) Ltd. v. Westville Riding Club, Inc.*, 82 F.Supp.2d 1254, 1256 (E.D. Okla. 1999), *aff'd sub nom. Zurich Reinsurance (London) Ltd. v. Remaley*, 203 F.3d 837 (10th Cir. 2000); *Leach v. Scottsdale Indemn. Co.*, 261 Or.App. 234, 323 P.3d 337, 344 (Or. Ct. App. 2014). Defendant contends that the money grab meets the four-part test and therefore the Athletic Exclusion applies.

In response, Plaintiff challenges Defendant's reliance on *Jefferson* and whether the use of the four-part test is proper. In doing so, Plaintiff accurately points out that the language of the policy exclusion at issue in *Garcia*—the case that first established the four-part test to determine the applicability of athletic exclusions—*Jefferson*—a Florida case that relied on *Garcia* in applying the four-part test—and the instant case differ. Specifically, the exclusion in *Garcia* applied to "any contest or exhibition of an athletic or sports nature," *Garcia*, 576 So.2d at 975, and the exclusion at issue in *Jefferson* applied to "any exhibition or diving event," *Jefferson Ins. Co.*, 586 So.2d at 97, while the Athletic Exclusion here applies to "any event of a sporting or athletic nature." (Athletic Exclusion at 25). While the Athletic Exclusion here does not contain the language "exhibition" or "contest," as in *Garcia, Jefferson*, and other cases cited by the parties that analyzed a sports or athletic participant exclusion, the Athletic Exclusion in Plaintiff's policy explicitly states that it excludes from coverage claims arising out of "*any event* of a sporting or athletic nature." *Id.* (emphasis added). Therefore, the Athletic Exclusion at issue in this case is broader than the athletic exclusions at issue in *Garcia* and *Jefferson*. Moreover, under its plain meaning, a sporting or athletic event

would reasonably be understood to encompass an exhibition or contest.[4] This Court is not persuaded that the differences in policy language support the conclusion that the four-part test generally used to determine the applicability of a sports or athletic exclusion should not be used here.[5] Thus, the Court will employ a slightly modified version of the test set forth in *Garcia* to encompass the broad language in the Athletic Exclusion here.

The first prong of the Garcia test requires a showing that "the event in which the person was injured was a contest or exhibition." *Garcia*, 576 So.2d at 976–77. This prong is unnecessary here because the Athletic Exclusion applies to "all events" of a sporting or athletic nature, not just "contests or exhibitions."

Turning to the second prong of the test—"that the [event] was of an athletic or sports nature," *id.*—Plaintiff argues that the Athletic Exclusion should be read narrowly to apply only to "typical sporting events." (Pl.'s Resp. to Def.'s Mot. Summ. J. at 4; *see also id.* at 3–4 (arguing that the Athletic Exclusion applies to "athletic and sporting events (i.e. races, ball games and boxing matches)"); Pl.'s Am. Mot. Summ. J. at 7 (arguing that the Athletic Exclusion only applies to "traditional sporting events")). However, Plaintiff fails to explain what sporting events would be defined as "typical." Furthermore, this contention is unsupported by Florida caselaw. Plaintiff's argument that *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.* supports the proposition that athletic exclusions have only been

read to apply to "actual athletic events" misses the mark. (*See* Pl.'s Am. Mot. for Summ. J. at 7). Rather, the *Tropical Park* court refused to find that an athletic exclusion applied when a boy who was hired to exercise a horse was injured while riding the horse once around a track because the boy was simply performing the duties required by his employment. *Tropical Park, Inc. v. U.S. Fidelity & Guaranty Co.*, 357 So.2d 253, 256 (Fla. 3d DCA 1978). Moreover, simply because past Florida cases have involved injuries sustained while participating in what Plaintiff labels as "typical sports," such as softball, *Morrison Assur. Co. v. City of Opa–Locka*, 389 So.2d 1079 (Fla. 3d DCA 1980), and running a fifty-yard dash, *Morrison Assur. Co. v. Sch. Bd. of Suwannee Cty.*, 414 So.2d 581 (Fla. 1st DCA 1982), does not mean that athletic exclusions should be construed to apply only to traditional or typical sporting or athletic activities, *see Jefferson*, 586 So.2d at 98 (determining that an exclusion for injuries incurred during any "exhibition or diving event" applied where a diver was killed while driving a jet ski during a performance at Sea World and noting that the performance required "athletic skills").

Instead, the term "sport" has been defined as "a source of diversion[;] recreation ... physical activity engaged in for pleasure." *Zurich*, 82 F.Supp.2d at 1256; *see also Nautilus v. Jesse James Festival, Inc.*, 269 S.W.3d 442, 446 (Mo. Ct. App. 2008) (defining "sport" as "physical exertion or recreation engaged in for pleasure"); *Merriam Webster's Collegiate Dic-*

---

**4.** Plaintiff implicitly concedes this by noting that in this case, the word "event" would be substituted for the words "contest or exhibition" when applying the four-part test to the instant case. (Resp. to Def's Mot. Summ. J., Doc. 36, at 2).

**5.** Plaintiff also argues that the *Garcia* four-part test is not a bright line test that must be

applied to the interpretation of every athletic exclusion. However, Plaintiff does not point this Court to any post-*Garcia* authority that declined to apply the four-part test to determine the applicability of an athletic exclusion. Moreover, as indicated above, the overwhelming trend in both Florida and non-Florida courts since *Garcia* is to analyze athletic exclusions under the four-part test.

*tionary* 1207 (11th ed. 2007) (defining "sport" as "a source of diversion ... [r]ecreation .... physical activity engaged in for pleasure ... a particular activity (as an athletic game) so engaged in"); *Webster's Third New International Dictionary* 2206 (2002) (defining "sport" as "something that is a source of pleasant diversion ... a pleasing or amusing pastime or activity ... [r]ecreation"; "a particular play, game, or mode of amusement").

Under this definition, the cash grab undoubtedly qualifies as an event of a sporting or athletic nature. Participants in the cash grab physically exerted themselves by attempting to grab cash that was attached to free-roaming bulls. This activity was engaged in for the pleasure of the competition and as a type of game or amusement. *See Zurich*, 82 F.Supp.2d at 1255–56 (determining that a nearly identical event fell within an exclusion for injuries sustained during a "sports or athletic contest or exhibition" because the participants "were engaged in physical activity for the pleasure of the competition itself and the possibility of winning money"); *Nautilus*, 269 S.W.3d at 446 (holding that an athletic or sports participants exclusion applied where audience members volunteered to stand in a circle chalked in a rodeo arena and remain while a bull was released into the arena for the opportunity to win a $100 prize because participation "would require physical exertion for the pleasure of the competition and the possibility of winning the prize").

Contrary to Plaintiff's assertions, the Court is not construing the Athletic Exclusion to include any event where participants exert even the slightest bit of physical effort or every event where participants attempt to win. Whether an event is included in an exclusion is a fact-intensive inquiry that must be determined on a case-by-case basis. The facts here support inclusion.

██ Additionally, Plaintiff's argument that the Athletic Exclusion does not apply because Cicero only ran about ten feet and such minimal physical activity does not qualify as participation in an event of a sporting or athletic nature, (Pl.'s Resp. to Def.'s Mot. Summ. J. at 4), is equally without merit. In determining whether an athletic exclusion applies, this Court is tasked with engaging in an "objective inquiry into the nature of the injured party's activity at the time of injury." *Leach v. Scottsdale Indemn. Co.*, 261 Or.App. 234, 323 P.3d 337, 345 (2014) (citing *Tropical Park*, 357 So.2d at 256–57. Objectively, the cash grab was a physical activity engaged in for fun, regardless of the level of effort exerted by Cicero or how far she ran. In conclusion, the cash grab qualifies as a sport and was an event of an athletic or sporting nature. As a result, the second prong of the four-part test has been satisfied.

The final two prongs—that the event was sponsored by the named insured and that the injured person was practicing for or participating in the event at the time of the injury—are undisputed and met.[6] Because Defendant has demonstrated that all four parts of the test used to determine the applicability of an athletic exclusion have been met, this Court concludes that the Athletic Exclusion applies. Accordingly, Cicero's claims against Plaintiff are not

---

**6.** The third prong, which requires a showing that the event was sponsored by the named insured, might not actually be required in this case. In *Garcia* and subsequent cases applying the four-part test, the athletic exclusions at issue excluded coverage for "any contest or exhibition of an athletic or sports nature *sponsored by the named insured*." *Garcia*, 576 So.2d at 975 (emphasis added). This language is not present in the Athletic Exclusion here. Nevertheless, it is undisputed that Defendant sponsored "Cracker Day" and the cash grab, making the question as to whether the third prong need be proven a non-issue.

covered by the policy, and Defendant had no duty to defend Plaintiff in connection with Cicero's suit.

### 2. *The Rodeo Performance Exclusion*

Having determined that Plaintiff's claims in connection with Cicero's suit were excluded from coverage pursuant to the Athletic Exclusion, this Court will not address the applicability of the Rodeo Performance Exclusion.

### C. Duty to Indemnify

 It has been established that the underlying suit brought by Cicero is excluded from coverage based on the Athletic Exclusion in Plaintiff's policy and that Defendant had no duty to defend. Therefore, it follows that Defendant had no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("A court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." (quotation omitted)).

### D. Attorney's Fees

 Plaintiff also seeks an award of attorney's fees under section 627.428, Florida Statutes. However, under the statute, attorney's fees and costs may only be awarded where the insured prevails against the insurer. *See Westport Ins. Corp.*, 513 Fed.Appx. at 932–33. Accordingly, Plaintiff's request for attorney's fees is denied.

### IV. CONCLUSION

Therefore, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED.**
2. Plaintiff's Amended Motion for Summary Judgment (Doc. 39) is **DENIED.**
3. The Clerk is directed to enter a declaratory Judgment in favor of Defendant, providing that Defendant has no

duty to defend and no duty to indemnify Plaintiff in the underlying suit brought by Cicero. Thereafter, the Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on October 27, 2016.