ZURICH REINSURANCE (LONDON) LIMITED, Plaintiff,

v.

WESTVILLE RIDING CLUB, INC. and James Curtis Remaley, Defendants.

No. 98–594–S.

United States District Court,
E.D. Oklahoma.

July 22, 1999.

Roger N. Butler, Jr., Tulsa, OK, Robert J. Lambert, Jr., Springdale, AR, for plaintiff.

Rex Earl Starr, Stilwell, OK, Mark Green, Muskogee, OK, Timothy J. Myers, Fayetteville, AR, for defendant.

## ORDER

SEAY, District Judge.

On December 21, 1998, this declaratory judgment action was instituted by Plaintiff, Zurich Reinsurance (London) Limited ("Zurich"), seeking to have this court determine rights under a commercial general liability insurance policy issued to Defendant, Westville Riding Club, Inc. ("Westville"). Zurich seeks a determination that it has no duty to defend Westville or to pay any judgment that might be rendered against Westville in favor of Defendant, James Curtis Remaley ("Remaley"), as a result of injuries sustained by Remaley on July 16, 1998, during the course of a rodeo sponsored by Westville. Jurisdiction is proper by virtue of diversity of citizenship under 28 U.S.C. § 1332(a) and venue is appropriate under 28 U.S.C. § 1391(a).

The parties agree that there are no genuine issues of fact in dispute and that this action should be submitted for disposition on the briefs and pleadings on file. In that regard, Zurich and Remaley have filed their respective motions for summary judgment seeking resolution of the legal issue of whether the policy's exclusionary endorsement, CG 21 01 11 85, entitled "EXCLUSION–ATHLETIC OR SPORTS PARTICIPANT" excludes coverage for Remaley's injuries sustained on July 16, 1998. Having reviewed the parties' submissions, this court finds Zurich is under no duty to defend Westville or pay any judgment that might be entered against Westville in favor of Remaley resulting from Remaley's injuries sustained on July 16, 1998, during the course of the rodeo sponsored by Westville.

## I.

As indicated above, the facts are not in dispute. Sometime prior to July 16, 1998, Westville purchased a commercial general liability policy of insurance from Zurich containing an exclusionary endorsement, CG 21 01 11 85, entitled "EXCLUSION–ATHLETIC OR SPORTS PARTICI-PANT." This exclusionary endorsement described the general liability coverage of the policy as "Rodeos, including Products and/or Completed Operations" and further provided the following exclusion from such coverage:

> With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

The parties agree that the court's interpretation of this exclusionary endorsement will determine the issue of coverage under the policy.

On July 16, 1998, a rodeo was held in Westville, Oklahoma, which was sponsored in whole or in part by Westville. Scheduled events included calf roping, bull riding, saddle bronc, bareback, barrel racing, and team roping. Another scheduled event as part the rodeo was an event called "Money the Hard Way," in which members of the general audience were given an opportunity to enter the arena and win a $50.00 cash prize by removing a string or ribbon from the horns of a bull. On July 16, 1998, Remaley was a member of the general audience and he was the only member of that audience to accept the rodeo announcer's invitation to come out of the stands and participate in "Money the Hard Way" and attempt to remove the ribbon from the bull's horns. During his participation in "Money the Hard Way," Remaley was "head butted" by the bull and he sustained bodily injuries.

## II.

Zurich contends the exclusionary endorsement is plain, unambiguous, and enforceable. It is Zurich's position that Remaley, by volunteering to participate in "Money the Hard Way," became a participant in a "sports or athletic contest" sponsored by Westville within the meaning of the exclusionary endorsement. Zurich cites the decisions of other courts wherein it was held that the same or similar exclusionary language was unambiguous and provided no coverage. *Ruppa v. American States Insurance Company,* 91 Wis.2d 628, 284 N.W.2d 318 (1979) (injuries sustained by horse rider in cutting event at horse show); *Madison County Sheriff's Posse, Inc. v. Horseman's United Association, Inc.,* 434 So.2d 1387 (Ala.1983) (horse rider, who had previously participated in an horse show event and was warming up his horse for a second event when he was injured when his horse tripped over a farm implement); *Morrison Assurance Co. v. School Board of Suwannee County,* 414 So.2d 581 (Fla.1982) (student/softball player injured while practicing for a game when she fell over wheelbarrow left near softball diamond); *General Insurance Company of America v. Academy of the Visitation at St. Louis,* 598 F.Supp. 1131 (E.D.Mo.1984) (student injured when she fell off balance beam while participating in mandatory school event known as "Play Day"); *see also Friar v. Statutory Trustees of Kirkwood Sports Association, Inc.,* 959 S.W.2d 808 (Mo.Ct.App.1997) (baseball player injured during American Legion baseball game); *Benton County Agricultural Society v. St. Paul Surplus Lines Insurance Company,* 372 N.W.2d 383 (Minn.Ct.App.1985) (participant in three-wheel racing event at county fair).

Westville and Remaley, on the other hand, contend the language of the exclusionary endorsement is ambiguous and susceptible to more than one meaning; therefore, it should be construed against Zurich, the insurer, and in favor of coverage for Westville. In this regard, Westville and Remaley argue Remaley was not an athletic participant, but rather, was a spectator who only had incidental participation in "Money the Hard Way," an ancillary rodeo event. *See Garcia v. St. Bernard Parish School Board,* 576 So.2d 975

(La.1991) (cheerleader, who was injured while cheerleading at football game, not excluded from coverage since her participation was merely ancillary to the football game which was the principal event sponsored by defendant); *Hockey Club of Saginaw v. Insurance Company of North America,* 468 F.Supp. 101 (E.D.Mich.1979) (hockey official, who was injured when he was assaulted by a hockey player during a stoppage in play, was not an athletic participant under exclusionary language); *Clermont Central Soccer v. Cincinnati Insurance Company,* 82 Ohio Misc.2d 31, 676 N.E.2d 1281 (Ohio Com.Pl.1995) (soccer referee injured during soccer match not an athletic participant under exclusionary language).

▇▇▇ Under Oklahoma law, "[t]he interpretation of an insurance contract and whether it is ambiguous is a matter of law for the court to determine and resolve." *Dodson v. St. Paul Insurance Company,* 812 P.2d 372, 376 (Okla.1991). The words of an insurance contract "must be considered not in a technical but in a popular sense, and they should be construed according to their plain, ordinary and accepted use in common speech, unless it affirmatively appears that a different meaning was intended." *National Aviation Underwriters v. Altus Flying,* 555 F.2d 778, 782 (10th Cir.1977). When an insurer relies on exclusionary language to escape liability, it has the burden of showing the insured's loss was within the scope of the exclusionary language. *Wiley v. Travelers Insurance Company,* 534 P.2d 1293, 1296 (Okla.1974). Although any ambiguities or uncertainties will be resolved in favor of the insured, parties are nevertheless bound by the clear terms and provisions of the policy under contract law and an insurer's legal liability will extend no further. *Evans v. Hartford Life Insurance Company,* 704 F.2d 1177, 1179 (10th Cir.1983).

Other courts which have addressed the same or similar exclusionary language have stated that in order for an insurer to establish the applicability of a "Sports or Athletic Participant" exclusion, the insurer has the burden of proving the following elements:

1. That the event in which the person was injured was a contest or exhibition;

2. That the contest or exhibition was of an athletic or sports nature;

3. That the contest or exhibition was sponsored by the named insured; and

4. That the injured person was practicing for or participating in the contest or exhibition at the time of the injury.

*Garcia,* 576 So.2d at 976–77 and *Jefferson Ins. Co. of New York v. Sea World of Florida, Inc.,* 586 So.2d 95, 97 (Fla.App. 1991).

▇▇▇ As applied to the facts of this case, it is clear that Zurich has sustained its burden of proving the applicability of the exclusion. First, it is undisputed that the event in which Remaley was injured, "Money the Hard Way," was a "contest" in that Remaley, and potentially others, were competing in an attempt to win $50.00 by removing the ribbon from the bull's horns. This event clearly satisfies the dictionary definition of "contest," which is "a struggle for superiority or victory: competition." *Webster's Ninth New Collegiate Dictionary* 283 (1986). Second, "Money the Hard Way" was a contest which was of an "athletic or sports nature." "Sport" is defined as "a source of diversion: recreation ... physical activity engaged in for pleasure." *Id.* at 1141. Participants in "Money the Hard Way," who physically exerted themselves by attempting to remove the ribbon from the bull's horns, were engaged in physical activity for the pleasure of the competition itself and the possibility of winning money. Third, it is undisputed that Westville sponsored, in whole or in part, the rodeo held on July 16, 1998, and that Westville made the decision to sponsor an event at its rodeo called "Money the Hard Way." Fourth and finally, it is undisputed that Remaley was injured while par-

ticipating in the "Money the Hard Way" event. Consequently, the court finds that the exclusionary endorsement in question in this case applies and that Remaley's injuries are excluded from coverage.

The court finds Defendants' arguments in support of a finding of ambiguity unpersuasive. The cases relied upon by Defendants—*Garcia, Hockey Club of Saginaw,* and *Clermont Central Soccer Association*—are factually distinguishable. The cheerleader in *Garcia* was not participating in the principal contest or athletic event—the football game. In the context of a football game, cheerleading is clearly an ancillary event. Here, Remaley was participating in a rodeo event, "Money the Hard Way," when he was injured. This event was not ancillary to the rodeo, but rather, it took place within the arena and it was part of the program of events regularly scheduled for the rodeo. Thus, *Garcia* does not support Defendants' argument that Remaley's injuries are not excluded from coverage because he participated in an ancillary event.

Turning to *Hockey Club of Saginaw* and *Clermont Central Soccer Association,* the court finds that these cases involving injuries sustained by officials or referees during the course of athletic contests are distinguishable from the facts herein where Remaley was an actual participant directly involved in the sports contest. It is reasonable to conclude, as the courts in *Hockey Club of Saginaw* and *Clermont Central Soccer Association* did, that an official or referee of a sports contest is not an "athletic participant" under the subject exclusionary language in that such individuals are employees working in connection with the holding of the contest. They are not "athletic participants" in that they did not compete in the contest itself. Remaley, on the other hand, was an "athletic participant" because he was a participant in the competition—he was attempting to be victorious in removing the ribbon from the bull's horns and securing the $50.00 prize. In this regard, the court finds Remaley's status as a participant in "Money the Hard Way" compares favorably to the "athletic participant" status of the injured parties in the cases relied upon by Zurich for the proposition of no coverage under the unambiguous language of the exclusionary endorsement. Remaley was clearly a participant as contemplated by the exclusionary endorsement. Consequently, with respect to Remaley's participation in "Money the Hard Way," no ambiguity exists under the exclusionary endorsement which excludes from coverage "any person ... participating in any sports or athletic contest...."

### III.

When Remaley left the general audience on July 16, 1998, and entered the competition known as "Money the Hard Way," he relinquished his status as a spectator and entered the arena as a participant in a sports contest sponsored by Westville. Under the unambiguous language of the exclusionary endorsement of the commercial general liability policy at issue in this case, Zurich provided no coverage to Westville for participants in such sports contests.

Based on the foregoing reasons, Zurich's motion for summary judgment is granted and Remaley's motion for summary judgment is denied. The court enters declaratory judgment in favor of Zurich declaring the rights and liabilities of the parties as follows: (1) the subject policy affords no liability coverage as to the claims of Remaley against Westville; (2) Zurich owes no duty to defend Westville in any action that might be brought against Westville; (3) Zurich has no duty to pay any judgment which might be entered in any action against Westville; and (4) Zurich has no duty to make payments to anyone under the terms of the policy.