Leslie E. Kobayashi, United States District Judge
Before the Court are: 1) Plaintiff Great Divide Insurance Company's ("Great Divide") Motion for Summary Judgment ("Motion"), filed November 8, 2018; 2) Defendants Hawaiian Kamali'i, Inc., doing *813 business as Hawaiian Canoe Club ("HCC"), Hawaiian Canoe Racing Association ("HCRA"), and Kihei Canoe Club's ("KCC" and collectively "Club Defendants") Counter Motion for Partial Summary Judgment Re: Duty to Defend ("Countermotion"), filed December 28, 2018; and 3) Defendant Mark David Stevens's ("Stevens") joinder of simple agreement in the Countermotion ("Joinder"), also filed on December 28, 2018. [Dkt. nos. 38, 49, 51.] These matters came on for hearing on January 18, 2019. On February 5, 2019, an entering order was issued, informing the parties of the Court's rulings. [Dkt. no. 63.] This Order supersedes that entering order. For the reasons set forth below, Great Divide's Motion is granted and the Club Defendants' Countermotion and Stevens's Joinder are denied.
BACKGROUND
Great Divide filed the instant action to obtain a declaratory judgment that it does not have a duty to defend nor a duty to indemnify the Club Defendants and Stevens (all collectively "Defendants") as to claims arising from a September 16, 2016 incident. [Complaint for Declaratory Judgment ("Complaint"), filed 4/17/18 (dkt. no. 1), at ¶ 9.] Great Divide filed this action pursuant to diversity jurisdiction and the Declaratory Judgment Act. [Id. at ¶¶ 6-7 (citing 28 U.S.C. §§ 1332, 2201 ).]
I. The Underlying Action
The action for which Defendants sought defense and indemnification from Great Divide is a state court action filed on November 14, 2017 by Faith Ann Kalei-Imaizumi ("Kalei-Imaizumi"), her husband, and their children ("Underlying Plaintiffs"), Kalei-Imaizumi, et al. v. Stevens, et al., Civil No. 17-1-0474 ("Underlying Action"). [Concise Statement in Supp. of Motion ("Motion CSOF"), filed 11/8/18 (dkt. no. 39), at ¶ 1; Concise Statement of Facts in Supp. of Countermotion ("Countermotion CSOF"), filed 12/28/18 (dkt. no. 50), at pg. 2 (admitting Great Divide's ¶ 1).[1] ]
The Complaint in the Underlying Action ("Underlying Complaint") alleges:
-HCRA " 'was an event sponsor, host and/or an organizer of the 2016 Pailolo Challenge Outrigger Canoe Race that took place on September 17, 2016' " (the "2016 Pailolo Challenge" or "the Challenge"); [Motion CSOF at ¶ 2; Countermotion CSOF at pg. 2 (admitting Great Divide's ¶ 2);]
-the annual Pailolo Challenge is a twenty-six mile, outrigger canoe race from Kapalua, Maui to Kaunakakai, Moloka'i; [Motion CSOF at ¶ 3; Countermotion CSOF at pg. 2 (admitting that Great Divide's ¶ 3] is "accurately quoting from the Underlying [Complaint]"); and
-"[t]he 2016 Pailolo Challenge was the tenth time that Defendant HCC hosted, organized, and/or staged the event." [Motion CSOF at ¶ 4; Countermotion CSOF at pg. 2 (same as with ¶ 3) ].
The state-issued, marine ocean water event permit for the 2016 Pailolo Challenge identifies HCRA as the Challenge sponsor. [Motion CSOF at ¶ 5; Countermotion CSOF at pg. 2 (admitting Great Divide's ¶¶ 5-22 "accurately quot[es] from the Underlying [Complaint]," but denying those are the only relevant allegations in the Underlying Complaint).] The Underlying Action also alleges HCRA was the *814 Challenge sponsor, as well as a host and/or organizer of the Challenge. [Countermotion CSOF at ¶¶ 7-8; Response to Countermotion CSOF ("Reply CSOF"), filed 1/4/19 (dkt. no. 53), at ¶¶ 7-8.[2] ] As the Challenge host, HCC "had substantial control over and involvement in the staging of the race, including the right to hire and fire the race director and staff" and "had the right to determine and/or enforce the rules and regulations governing eligibility for and the conduct of the race." [Motion CSOF at ¶ 6; Countermotion CSOF at pg. 2.]
The Underlying Complaint alleges that, prior to the 2016 Pailolo Challenge, Stevens agreed to provide and operate an escort boat for one of the participating teams. At all relevant times, Stevens owned the "Ohana," a twenty-six-foot 2004 Twin Vee Weekender, and he "was an employee, servant and/or authorized agent of Defendants HCRA, HCC and/or KCC acting within the course and scope of that relationship." [Motion CSOF at ¶¶ 7-9; Countermotion CSOF at pg. 2.] The Ohana had a ladder between its two outboard motors, neither of which had a propeller guard. Further, the Ohana did not have a " 'kill switch' " or other device to prevent the motors from operating while the ladder was deployed. [Motion CSOF at ¶ 10; Countermotion CSOF at pg. 2.]
Kalei-Imaizumi was part of the switch crew of the team whose canoe the Ohana was to escort during the 2016 Pailolo Challenge. After the crew members had boarded the Ohana, but before the Ohana began escorting the team's canoe, and while the Ohana was still in a congested race staging area, Stevens's hat flew into the water. Kalei-Imaizumi entered the water from the Ohana to retrieve the hat. As she attempted to re-board the Ohana using the ladder between the motors, the Ohana reversed and a propeller from one of the motors struck her while she was at or near the ladder. Kalei-Imaizumi suffered significant injuries, resulting in the amputation of her left leg and permanent brain injury. [Motion CSOF at ¶¶ 12-15; Countermotion CSOF at pg. 2.]
Stevens owned the Ohana. [Countermotion CSOF at ¶ 11; Reply CSOF at ¶ 11 (admitting the Club Defendants' ¶ 11).] Stevens has stated, in answers to interrogatories in the Underlying Action, that he was hired for the 2016 Pailolo Challenge by Catherine Bellafiore ("Bellafiore"). [Motion CSOF at ¶ 30; Countermotion CSOF at pg. 3 (admitting that Great Divide accurately referred to Stevens's answers to interrogatories).] The Underlying Complaint can be interpreted as alleging that KCC and/or one of its affiliates hired Stevens. [Countermotion CSOF at ¶ 12; Reply CSOF at ¶ 12.] Specifically, "[i]n her Pretrial Statement, Ms. Kalei-Imaizumi alleged that Bellafiore was 'acting as an authorized agent and/or representative of Defendant KCC (NOT HCC).' " [Countermotion CSOF at ¶ 14; Reply CSOF at ¶ 14.]
The Underlying Action includes: a negligent failure to warn claim against Stevens; a claim that Stevens was negligent or grossly negligent in operating the Ohana; a claim that the Club Defendants were negligent in their staging of the race; a claim against the Club Defendants alleging they obtained insufficient liability insurance for the 2016 Pailolo Challenge; a negligent infliction of emotional distress claim against Defendants; and a loss of consortium claim against all Defendants. [Motion *815 CSOF at ¶¶ 16-21; Countermotion CSOF at pg. 2.]
II. The Policy
During the period from April 1, 2016 to April 1, 2017, HCC held a Commercial General Liability Insurance Policy, policy number GC966353, issued by Great Divide ("Policy"). [Motion CSOF at ¶ 23; Countermotion CSOF at pg. 3 (admitting Great Divide's ¶ 23); Motion CSOF, Decl. of J. Patrick Gallagher ("Gallagher Decl."), Exh. B (Policy).[3] ] The Policy's Insuring Agreement appears in the Commercial General Liability Coverage Form, CG 00 01 12 04 ("CGL Form"), Section I, and states:
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result....
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" ....
[Policy at 11.[4] ] The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [Id. at 22, ¶ 3.] The parties agree that Kalei-Imaizumi alleges she suffered a bodily injury. [Countermotion CSOF at ¶ 3; Reply CSOF at ¶ 3.[5] ] The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Policy at 24, ¶ 13.]
A. The Insureds
Section II of the CGL Form states:
WHO IS AN INSURED
1. If you are designated in the Declarations as:
....
d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stock holders are also insureds, but only with respect to their liability as stockholders.
....
2. Each of the following is also an insured:
a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if *816 you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.
[Id. at 19 (emphasis omitted).[6] ] The "ADDITIONAL INSURED - CLUB MEMBERS" endorsement, CL 239 (11/85) CG 20 02 11 85 ("Member Endorsement"), amends Section II "to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf." [Id. at 27.]
Further, the "ADDITIONAL INSURED - PRIMARY AND NONCONTRIBUTORY - AUTOMATIC STATUS WHEN REQUIRED IN CONTRACT OR AGREEMENT" endorsement, L805 (05/09) ("Contract/Agreement Endorsement"), states:
A. Section II - Who Is An Insured is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf:
1. In the performance of your ongoing operations for the additional insured; or
2. In connection with premises owned by or rented to you.
But only for:
1. The limits of insurance specified in such written contract or agreement, but in no event for limits of insurance in excess of the applicable limits of insurance of this policy; and
2. "Occurrences" or coverages not otherwise excluded in the policy to which this endorsement applies.
B. Status as an additional insured for the person or organization to which this endorsement applies:
1. Commences during the policy period and after such written contract or agreement has been executed; and
2. Ends when:
a. Your ongoing operations for that additional insured are completed;
b. The contractor's contract or agreement is terminated;
c. The lease of premises expires; or
d. Your policy cancels or expires;
whichever occurs first.
[Id. at 49 (emphases omitted).]
B. Relevant Exclusions
The Insuring Agreement includes the following, which will be referred to as the "Watercraft Exclusion":
This insurance does not apply to:
....
g. Aircraft, Auto Or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, *817 use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
This exclusion does not apply to:
(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge[.]
[Id. at 12, § 2 and 14, § 2.g (emphasis in original).]
The Policy also includes an endorsement setting forth an exclusion for events, Form L318 (11/10) ("Events Exclusion"):
A. The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability and Coverage C - Medical Payments:
This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "event" managed, operated or sponsored by the insured.
B. The following definitions are added to the Definitions section:
1. "Event" means any activity of an athletic or sports, or entertainment nature of "limited duration" that you manage, operate, or sponsor including, but not limited to, a carnival, circus, concert, contest, demonstration, exhibition, fair, game, match, parade, race, rodeo, show, stunting activity, or theatrical performance.
2. "Limited duration" means a time period that can be established by a beginning and ending date.
[Id. at 45 (emphases omitted).]
DISCUSSION
I. Applicable Law
Because federal jurisdiction in this case is based on diversity, this Court applies Hawai'i substantive law.[7] See G & G Prods. LLC v. Rusic, 902 F.3d 940, 946 (9th Cir. 2018). Great Divide seeks summary judgment as to its duty to defend and its duty to indemnify Defendants, and the Club Defendants seek summary judgment as to the duty to defend HCC. This Court will examine the issues presented by the parties in light of the following principles of Hawai'i insurance law.
First, "insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy *818 that a different meaning is intended." Dairy Rd. Partners v. Island Ins. Co., 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000) (brackets and citation omitted). Thus, policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer." 92 Hawai'i at 412, 992 P.2d at 107 (alteration in original). Second, pursuant to Hawai'i Revised Statutes § 431:10-237 (1993): "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy." Moreover, "[b]ecause an insurer's duty to defend its insured is contractual in nature, we must look to the language of the policy involved to determine the scope of that duty." Sentinel [Ins. Co. v. First Ins. Co. of Hawai'i], 76 Hawai'i [277,] 287, 875 P.2d [894,] 904 [ (1994) ]. "[W]henever the insurer relies on an exclusionary clause of a policy as a defense to liability, it has the burden of proving facts which bring the case within the exclusion." Quinn v. Wilshire Ins. Co., 53 Haw. 19, 21, 486 P.2d 59, 60 (1971). In addition, any ambiguity in an exclusionary clause is construed in favor of the insured and "strictly construed against the insurer." Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970).
C. Brewer & Co. v. Marine Indem. Ins. Co. of Am., 135 Hawai'i 190, 196, 347 P.3d 163, 169 (2015) (some alterations in C. Brewer ).
"It is well settled that the duty to provide coverage [i.e. , the duty to indemnify,] and the duty to defend on the part of an insurer are separate and distinct." Sentinel Ins. Co., Ltd. v. First Ins. of Hawai'i, Ltd., 76 Hawai'i 277, 291, 875 P.2d 894, 908 (1994) (citations omitted). Moreover, the parties' respective burdens of proof with respect to the duties to indemnify and to defend are also distinct.
Dairy Rd., 92 Hawai'i at 412, 992 P.2d at 107 (alteration in Dairy Rd. ). The Hawai'i Supreme Court has recognized that, when the plaintiff-insurer in a declaratory judgment action seeks a summary judgment ruling that it has no duty to defend the defendant-insured, the "already heavy burden of proof as a movant for summary judgment [i]s significantly augmented." See id. (citation omitted).
"[T]he obligation to defend ... is broader than the duty to pay claims and arises wherever there is the mere potential for coverage." Commerce [& Indus. Ins. Co. v. Bank of Hawai'i, 73 Haw. 322,] 326, 832 P.2d [733,] 735, [reconsideration denied , 73 Haw. 625, 834 P.2d 1315 (1992) ] (emphasis added) (citations omitted). In other words, the duty to defend " 'rests primarily on the possibility that coverage exists. This possibility may be remote but if it exists[,] the [insurer] owes the insured a defense.' " Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd., 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) (quoting Spruill Motors, Inc. v. Universal Under. Ins. Co., 212 Kan. 681, 686, 512 P.2d 403, 407 (1973) ) (emphasis added). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured[.]" Trizec Properties, Inc. v. Biltmore Constr. Co., 767 F.2d 810, 812 (11th Cir. 1985) (citing 7C Appleman, Insurance Law & Practice, 99-100 (Berdal ed. 1979) ).
Sentinel Ins. Co., 76 Hawai'i at 287, 875 P.2d at 904 (brackets in original).
Accordingly, in connection with the issue of its duty to defend, Island [Insurance Co. ("Island") ] bore the burden of proving that there was no genuine *819 issue of material fact with respect to whether a possibility existed that [Dairy Road Partners ("DRP") ] would incur liability for a claim covered by the policies. In other words, Island was required to prove that it would be impossible for the [plaintiffs in the underlying lawsuits] to prevail against DRP in the underlying lawsuits on a claim covered by the policies . Conversely, DRP's burden with respect to its motion for summary judgment was comparatively light, because it had merely to prove that a possibility of coverage existed. See Montrose Chemical Corp. of California v. Superior Court, 6 Cal. 4th 287, 24 Cal.Rptr.2d 467, 475, 861 P.2d 1153 (1993) (holding that "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot " (emphasis in original), and explaining that "[a]ny seeming disparity in the respective burdens merely reflects the substantive law").
Id. at 412-13, 992 P.2d at 107-08 (some alterations and some emphases in Dairy Rd. ) (footnote and some citations omitted). An insurer's "duty to defend must be determined, at least initially, as of the time of [the insured]'s tender of its defense in the underlying lawsuit[ ]." See id. at 413, 992 P.2d at 108 (citations omitted).
II. HCRA and KCC
Great Divide argues that neither HCRA nor KCC is an insured under the Policy, and the Club Defendants have not challenged this position. See Countermotion at 10 n.2 (stating the Club Defendants "at this time do not contest [Great Divide]'s assertion that HCRA and KCC are not insureds under the Policy"). However, for the sake of completeness, this Court will address whether HCRA and KCC are insureds.
HCC is "a non-profit organization under Section 501(c)(3) of the Internal Revenue [C]ode and incorporated under the laws of Hawai'i," and HCRA and KCC are the same type of entity as HCC. [Complaint at ¶¶ 2-4; Club Defs.' answer to Complaint, filed 5/17/18 (dkt. no. 12), at ¶ 3 (admitting the allegations in ¶¶ 2-4 of the Complaint).] Because HCC is not a partnership, joint venture, or limited liability company, § II.1.d of the Policy applies. Under that provision, HCC's executive officers and directors, HCC's volunteer workers, and HCC's employees are also insureds. [Policy at 19.] HCRA and KCC are separate organizations that do not meet any definition of an additional insured under the Policy. Even if HCC has members, the Underlying Complaint does not allege, and there has been no evidence presented that either HCRA or KCC is a member of HCC.[8] Thus, the Member Endorsement does not apply. Further, because there is no evidence of a written contract or agreement between either HCC and KCC or HCC and HCRA, the Contract/Agreement Endorsement does not apply.
Based on the foregoing, there are no genuine issues of material fact, and it *820 would be impossible for the Underlying Plaintiffs to prevail on a claim that is covered by the Policy because neither HCRA nor KCC is an insured under the Policy. See Dairy Rd., 92 Hawai'i at 107-08. Therefore, as a matter of law, Great Divide does not have a duty to defend either HCRA or KCC. Because the duty to defend is broader than the duty to indemnify, see Commerce & Indus., 73 Haw. at 326, 832 P.2d at 735, the absence of a duty to defend also means Great Divide does not have a duty to indemnify either HCRA or KCC. Summary judgment is granted to Great Divide as to these issues. See Fed. R. Civ. P. 56(a).
III. Stevens
As previously noted, it is undisputed that Stevens owned and operated the Ohana on the day of the 2016 Pailolo Challenge. Great Divide argues Stevens is not entitled to coverage under the Policy because: he is not an additional insured; or, if he is an additional insured, the Watercraft Exclusion precludes coverage for the incident at issue in the Underlying Action.
The Underlying Plaintiffs alleged KCC or its affiliate hired Stevens for the 2016 Pailolo Challenge. [Gallagher Decl., Exh. A (Underlying Complaint) at ¶ 8.] In the course of the Underlying Action, Stevens admitted that he was hired by Catherine Bellafiore ("Bellafiore"). [Motion CSOF at ¶ 30; Countermotion CSOF at pg. 3 (admitting that Great Divide's ¶ 30 accurately refers to Stevens' answers to interrogatories); Gallagher Decl., Exh. C (Stevens's response to the Underlying Plaintiffs' 3/6/18 request for answers to interrogatories, dated 5/1/18 by Stevens's counsel).] There is no evidence in the record that Bellafiore was an employee, servant, or agent of HCC. To the contrary, Bellafiore has been identified as a member and agent of KCC. See Countermotion CSOF, Decl. of Bruce H. Wakuzawa ("Wakuzawa Decl."), Exh. 3 (the 12/12/18 Pretrial Statement, filed by the plaintiffs in the underlying action regarding liability for the Incident) at 4, 11. Even if Stevens was a KCC employee acting within the scope of his employment, he is not an insured under the Policy because KCC is not an insured.
Moreover, even if this Court's consideration is limited to the allegations of the Underlying Complaint, Stevens would not be an insured. According to the Underlying Complaint:
At all relevant times, Defendant Stevens was an employee, servant and/or authorized agent of Defendants HCRA, HCC and/or KCC acting within the course and scope of that relationship, such that Defendant HCRA, HCC and/or KCC are vicariously liable for the negligence of Defendant Stevens, as alleged herein, including under the doctrine of respondeat superior ,
[Underlying Complaint at ¶ 19.] To the extent the Underlying Complaint alleges Stevens was an employee, servant, or agent of KCC or HCRA, Stevens would not be an insured because neither KCC nor HCRA is an insured. To the extent the Underlying Complaint alleges Stevens was an employee, servant, or agent of HCC, acting within the scope of his employment, he would be an insured under the Policy. See Policy at 19, § II.2.a. However, in that instance, the Watercraft Exclusion would apply because Kalei-Imaizumi's claims in the Underlying Action would allege " 'bodily injury' ... arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to any insured." See Policy at 14, § 2.g. Neither of the exceptions to the Watercraft Exclusion would apply because: based on the allegations of the Underlying Complaint, the Ohana was not *821 ashore at the time of the injury; and the Ohana is twenty-six-feet long. See Motion CSOF at ¶ 8; Countermotion CSOF at pg. 2. Thus, even if Stevens is an insured under the Policy, the Watercraft Exclusion would apply and would preclude coverage of the claims against Stevens.
There are no genuine issues of material fact, and it is impossible for the Underlying Plaintiffs to prevail on a claim against Stevens that is covered by the Policy because either he is not an insured or, if he is an insured, the Watercraft Exclusion applies. Therefore, as a matter of law, Great Divide does not have a duty to defend Stevens. Because the duty to defend is broader than the duty to indemnify, the absence of a duty to defend also means Great Divide does not have a duty to indemnify Stevens. Summary judgment is granted to Great Divide as to these issues.
IV. HCC
A. Watercraft Exclusion
First, if Stevens is an insured under the Policy and the Watercraft Exclusion applies to him, it would also preclude coverage for HCC. See Policy at 12, § 2 and 14, § 2.g ("This insurance does not apply to ... "[b]odily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... watercraft owned or operated by or rented or loaned to any insured ." (emphases added) ). According to the plain language of the Watercraft Exclusion, if it applies, coverage is not available for any of the claims arising out of the incident in which Kalei-Imaizumi was injured. See Dairy Rd., 92 Hawai'i at 411, 992 P.2d at 106.
B. Events Exclusion
Even if the Watercraft Exclusion does not preclude coverage of the claims against HCC (because either Stevens is not an insured or, if he is an insured, the exclusion can be interpreted to apply only to him), this Court would still conclude that coverage is not available to HCC for the claims arising from Kalei-Imaizumi's injury because of the Events Exclusion.
1. Manage, Operate, or Sponsor
Based on the allegations in the Underlying Complaint, the 2016 Pailolo Challenge was an athletic or sports race of a limited duration. See Motion CSOF at ¶ 2 (stating the Underlying Complaint alleges the 2016 Pailolo Challenge took place on September 17, 2016); Countermotion CSOF at ¶ 2 (admitting Great Divide's ¶ 2); Motion CSOF at ¶ 3 ("The Pailolo Challenge is an annual 26 mile open ocean outrigger canoe race."); Countermotion CSOF at ¶ 3 (admitting Great Divide's ¶ 3 accurately quotes from the Underlying Complaint). The Club Defendants first argue the Events Exclusion does not preclude coverage because, based on the allegations of the Underlying Complaint, there is a possibility that the Events Exclusion is inapplicable to the claims in the Underlying Action because the 2016 Pailolo Challenge was not "managed, operated or sponsored by" HCC. See Policy at 45.
The Club Defendants admit that the Underlying Complaint alleges the 2016 Pailolo Challenge was the tenth time HCC had "hosted, organized and/or staged" the Challenge. [Motion CSOF at ¶ 4; Countermotion CSOF at pg. 2; Underlying Complaint at ¶ 14.] They also admit that the Underlying Complaint alleges HCC: "provided substantial labor and materials necessary to host, organize and stage the 2016 Pailolo Challenge"; and "had substantial control over and involvement in the staging of the race," including personnel decision, as well as the determination and enforcement of race rules and regulations. [Motion CSOF at ¶ 6; Countermotion CSOF at pg. 2; Underlying Complaint at *822 ¶ 17.] However, the Club Defendants emphasize that the 2016 Pailolo Challenge's marine ocean water event permit identifies HCRA as the Challenge's sponsor. Further, the Underlying Plaintiffs allege: "HCRA was an event sponsor, host and/or an organizer of the 2016 Pailolo Challenge"; [Underlying Complaint at ¶ 6;] and KCC or its affiliate retained Stevens's services for the Challenge,[9] [id. at ¶ 8].
Even resolving all doubts in favor of HCC, see Sentinel Ins., 76 Hawai'i at 287, 875 P.2d at 904, the Underlying Complaint's allegations merely suggest that: HCRA was the sponsor of the 2016 Pailolo Challenge; KCC hired Stevens for the Challenge; although not the sponsor, HCC was the host of the Challenge; and, as the host, HCC had significant responsibilities. The fact that HCC was not the sponsor of the 2016 Pailolo Challenge does not render the Events Exclusion inapplicable because the exclusion only requires that the activity be one that the insured "manage[s], operate[s], or sponsor[s]." See Policy at 45 (emphasis added). The Events Exclusion applies if the insured does any one of the three things. The terms "manage" and "operate" are interpreted according to their plain and ordinary meanings because the Policy does not indicate that different meanings were intended. See Dairy Rd., 92 Hawai'i at 411, 992 P.2d at 106. The Underlying Complaint's description of HCC's duties in hosting the 2016 Pailolo Challenge fall within the plain and ordinary meaning of "manage" and "operate." See Black's Law Dictionary 1103-04 (10th ed. 2014) (defining "manage" as: "1. To exercise executive, administrative, and supervisory powers. 2. To conduct, control, carry on, or supervise. 3. To regulate or administer a use or expenditure."); Webster's Third New International Dictionary 1580-81 (2002) (defining "operate" as including: "to perform a work or labor: expert power or influence: produce an effect"; and "to cause to occur: bring about by or as if by the exertion of positive effort or influence"). Thus, there is no question that the factual allegations of the Underlying Complaint support Great Divide's position that the 2016 Pailolo Challenge was an activity that HCC managed or operated.
The Club Defendants make much of paragraph 102 of the Underlying Complaint, which alleges: "HCRA, HCC and/or KCC had a duty to exercise reasonable care in sponsoring, hosting, organizing, planning, staging and/or managing the 2016 Pailolo Challenge."[10] [Underlying Complaint at pg. 24 (emphasis added).] The Club Defendants argue the use of "or" in paragraph 102 can be interpreted to mean that HCC did not do any of those things, and therefore it is possible that the Events Exclusion does not apply. [Countermotion at 12-13.] The Club Defendants' argument is misplaced. The term "or" is used in the context of "HCRA, HCC and/or KCC had a duty ," [Underlying Complaint at ¶ 102 (emphasis added),] which may mean that HCC did not have a duty. The allegation that HCC did not have a duty is a conclusory assertion of *823 law that is contrary to the factual allegations of the Underlying Complaint regarding HCC's duties related to HCC's hosting of the 2016 Pailolo Challenge. The conclusory assertion that HCC did not have a duty is not enough to negate the factual allegations which support Great Divide's position that the 2016 Pailolo Challenge was an activity that HCC managed or operated. See Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 458 n.19, 272 P.3d 1215, 1225 n.19 (2012) ("when the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts ... are insufficient to trigger the insurer's duty to defend" (emphasis in Hart ) (citation and some quotation marks omitted) ). The Club Defendants' argument that HCC did not "manage, operate, or sponsor" the 2016 Pailolo Challenge is rejected. This Court finds that the 2016 Pailolo Challenge was an "event" within the meaning of the Events Exclusion. See Policy at 45.
2. Whether the Incident Occurred During the 2016 Pailolo Challenge
The Club Defendants also argue that, even if the 2016 Pailolo Challenge was an "event," the Events Exclusion does not apply because Kalei-Imaizumi's accident did not occur while she was participating in the event. The Club Defendants emphasize that Kalei-Imaizumi was not injured while she was paddling or otherwise participating in the 2016 Pailolo Challenge; she reentered the water to retrieve Stevens's hat "before her race even started." [Countermotion at 15 (emphases omitted) (discussing Underlying Complaint at ¶¶ 24-25).]
The Events Exclusion states the Policy "does not apply to 'bodily injury' ... or medical payments arising out of any 'event.' " [Policy at 45.] The Hawai'i appellate courts have not addressed insurance policy exclusions similar to the Events Exclusion in the Policy that Great Divide issued to HCC. In the absence of controlling case law from the Hawai'i Supreme Court, this Court must predict how the supreme court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. See Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).
The parties argue this Court should apply the Hawai'i Supreme Court's analysis of the "arising out of" language in the automobile exclusions of CGL policies. See Oahu Transit Servs., Inc. v. Northfield Ins. Co., 107 Hawai'i 231, 112 P.3d 717 (2005). In Oahu Transit, the automobile exclusion stated there was no coverage for " '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' ... owned or operated by or rented or loaned to any insured." 107 Hawai'i at 232-33, 112 P.3d at 718-19 (alterations in Oahu Transit ) (some internal quotation marks omitted). The Hawai'i Supreme Court stated: "While the applicability of the phrase 'arising out of the ownership, maintenance, [or] use' is not entirely clear in every case, the phrase itself is unambiguous." Id. at 235, 112 P.3d at 721 (brackets and emphasis in Oahu Transit ). Because the phrase "arising out of" was unambiguous, the supreme court interpreted it in the same way, regardless of whether the phrase appeared in a coverage clause or an exclusion. Id. at 236, 112 P.3d at 722. The supreme court stated:
In the context of an automobile insurance coverage clause, this court has applied the following three-factor test to determine whether injuries arose from the use or operation of a motor vehicle:
*824 The first factor [is] whether the ... motor vehicle was an active accessory in causing [the] plaintiff's injuries....
The second factor [is] whether there was an independent act breaking the causal link between "use" of the vehicle and the injuries inflicted....
The third factor [is] whether the injuries resulted from use of the vehicle for transportation purposes[.]
Chock v. Gov't Employees Ins. Co., 103 Hawai'i 263, 267-68, 81 P.3d 1178, 1182-83 (2003) (citing AIG Hawai'i Ins. Co. v. Estate of Caraang, 74 Haw. 620, 640-41, 851 P.2d 321, 330-31 (1993) ) ....
Id. at 236-37, 112 P.3d at 722-23 (some alterations in Oahu Transit ) (footnote and some citations omitted). The supreme court held the first factor weighed in favor of the insurer because: his wheelchair tipped over while the van was moving, pinning him in a corner; and he was injured when the driver of the van tried to help him out of that position. Id. at 237, 112 P.3d at 723. Although the van was not moving when the claimant was injured, his injuries arose from the use or operation of the van, in part, because "[t]he use of an automobile naturally includes getting in and out of it." Id. (internal quotation marks and some citation omitted). Because the second factor did not weigh in favor of either party, and the third factor weighed in favor of the insurer, the supreme court held that the automobile exclusion applied because the claimant's injuries arose out of the use or operation of the van. Id. at 237-38, 112 P.3d at 723-24.
Based on the supreme court's holding that the phrase "arising out of" is unambiguous and is interpreted in the same manner regardless of whether it appears in the coverage clause of an automobile insurance policy or in an automobile exclusion of another type of policy, this Court could apply the Oahu Transit analysis to the Events Exclusion in the instant case. However, that analysis is an unsuitable mismatch in deciding event-based exclusions. An automobile is vastly different from an event, and the type of injuries that "aris[e] out of the ownership, maintenance, use or entrustment to others of an[ ] ... 'auto,' " see Oahu Transit, 107 Hawai'i at 232, 112 P.3d at 718 (some alterations in Oahu Transit ) (some internal quotation marks omitted), would often not be the same type of injuries that "aris[e] out of an[ ] 'event,' " [Policy at 45]. Therefore, the injuries that a lay person would reasonably expect to be excluded because of an automobile exclusion likely would not be consistent with the injuries that a lay person would reasonably expect to be excluded because of an events exclusion. Applying the Oahu Transit automobile exclusion analysis to an events exclusion may improperly result in coverage that is inconsistent with the reasonable expectations of a lay person. See Dairy Rd., 92 Hawai'i at 412, 992 P.2d at 107 ("the rule is that policies are to be construed in accord with the reasonable expectations of a layperson" (citations and quotation marks omitted) ). This Court therefore predicts that the Hawai'i Supreme Court would instead adopt the analysis used by other courts that have addressed exclusions for sporting or athletic events. See, e.g., Nautilus Ins. Co. v. Mobile Area Mardi Gras Ass'n, Inc. ("MAMGA"), Civil Action No. 10-0025-W, 2010 WL 4269184, at *4-5 (S.D. Ala. Oct. 27, 2010) ; and Zurich Reinsurance (London) Ltd. v. Westville Riding Club, Inc., 82 F.Supp.2d 1254, 1255-57 (E.D. Okla. 1999), aff'd sub nom. Zurich Reinsurance (London) Ltd. v. Remaley, 203 F.3d 837 (10th Cir. 2000).
James Curtis Remaley ("Remaley") was injured during a rodeo that Westville Riding Club, Inc. ("Westville") sponsored. Westville Riding, 82 F.Supp.2d at 1254.
*825 Remaley was a member of the audience who was injured while voluntarily participating in an event during the rodeo that required him to enter the arena and try to remove a ribbon from a bull's horns. Zurich Reinsurance (London) Limited ("Zurich") sought a declaratory judgment that the CGL policy it issued to Westville did not cover Remaley's claims because of an exclusion regarding athletic or sports participants. Id. at 1254-55. The exclusion provided that the policy did "not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor."[11] Id. at 1255. The district court found the exclusion to be unambiguous, id. at 1257, and applied the following analysis to determine whether Remaley's injuries fell within the scope of the exclusion:
in order for an insurer to establish the applicability of a "Sports or Athletic Participant" exclusion, the insurer has the burden of proving the following elements:
1. That the event in which the person was injured was a contest or exhibition;
2. That the contest or exhibition was of an athletic or sports nature;
3. That the contest or exhibition was sponsored by the named insured; and
4. That the injured person was practicing for or participating in the contest or exhibition at the time of the injury.
Garcia [v. St. Bernard Parish Sch. Bd.], 576 So.2d [975,] 976-77 [ (La. 1991),] and Jefferson Ins. Co. of New York v. Sea World of Florida, Inc., 586 So.2d 95, 97 (Fla. App. 1991).
Id. at 1256. The district court concluded Zurich carried its burden of proof because: the event during which Remaley was injured was a contest; the contest was athletic or sporting in nature; Westville was the sponsor, or one of the sponsors, of the rodeo, which included the contest Remaley participated in; and Remaley was injured while participating in the contest. The district court therefore granted summary judgment in Zurich's favor. Id. at 1256-57.
In MAMGA, the policy's events exclusion "exclude[d] coverage for bodily injury (a) to 'any person while ... participating in, any ... demonstration, event, exhibition, ... [or] show' or (b) to 'any person ... while in the activity area such as ... the pit, track, chute, corral or arena.' " 2010 WL 4269184, at *4 (some alterations in MAMGA ). The district court concluded that the events exclusion unambiguously precluded coverage because: the parade was an event; the injured party, Dominic Tyer ("Tyer"), was a participant in the event because he rode on a float during the parade; and Tyer was injured while participating in the event because, at the time of the accident, he was helping another rider dismount the float. Id. at *4-5.
In the instant case, this Court has found that the 2016 Pailolo Challenge was an "event," as that term is defined in the Events Exclusion. In addition, Kalei-Imaizumi was a participant in the event. See Underlying Complaint at ¶ 8 (alleging Stevens was hired "to operate an escort *826 boat for one of the KCC racing teams entered in the 2016 Pailolo Challenge"); id. at ¶ 23 (alleging Kalei-Imaizumi "was part of the switch crew for the outrigger canoe team to be escorted by Defendant Stevens"). Further, based on the analysis in MAMGA, Kalei-Imaizumi's injury arose out of her participation in the event. In MAMGA, Tyer sustained his injury after the parade was over and while he was helping another participant dismount the float. 2010 WL 4269184, at *1. Nevertheless, the district court concluded that "Tyer unquestionably sustained his injuries while 'participating' in an 'event' and while 'in the activity area.' " Id. at *4. In the instant case, when Kalei-Imaizumi was injured, the race had already started, although the crew she was a part of was still in the staging area. Further, she swam out to the Ohana and boarded it as part of her duties as a switch crew member. See Underlying Complaint at ¶ 23. Before the Ohana began escorting its designated canoe, Kalei-Imaizumi was injured while attempting to reboard the Ohana after reentering the water to retrieve Stevens's hat. [Id. at ¶¶ 24-25.] The instant case is similar to MAMGA because the act the injured party was engaged in when the injury occurred (Tyer helping other participants dismount float and Kalei-Imaizumi reboarding the canoe) happened outside of the injured party's participation in the event (Tyer's parade was over and Kalei-Imaizumi's switch crew had not left the staging area). Nevertheless, the act was inextricably related to the injured party's participation in the event. In order for Tyer and other participants to ride atop a float during the parade, they had to dismount at some point; and, after Kalei-Imaizumi reentered the water, in order for her to participate in the Challenge, she had to reboard the Ohana and rejoin the switch crew. The reason why she reentered the water is irrelevant to the analysis of whether the Events Exclusion applies. Based on the MAMGA analysis, the claims arising from Kalei-Imaizumi's injuries are not covered, based on "the clear, unambiguous language of the Events Exclusion." See 2010 WL 4269184.
The result is the same under the Westville Riding four-part analysis. First, the event in which Kalei-Imaizumi was injured, the 2016 Pailolo Challenge, was a contest. Second, it was an athletic or sports contest. Third, the 2016 Pailolo Challenge was an event that HCC managed or operated.[12] Fourth, Kalei-Imaizumi was participating in the contest at the time of the injury because she was boarding the Ohana, which was going to transport the switch crew to meet the rest of the team in order to compete in the contest. Thus, under the Westville Riding analysis, Great Divide has carried its burden to prove that the Events Exclusion applies to the claims in the Underlying Action.
If the Hawai'i Supreme Court adopted the analysis used by other courts in evaluating policy exclusions for athletic or sporting events, the supreme court would hold that the Events Exclusion in this case is clear and unambiguous and precludes coverage of the claims against HCC based upon Kalei-Imaizumi's injuries. However, the result would be the same, even if the supreme court applied the Oahu Transit automobile exclusion analysis, as modified to reflect the fact that the instant case involves an event exclusion and not an *827 automobile exclusion.[13] See 107 Hawai'i at 236, 112 P.3d at 722.
First, the 2016 Pailolo Challenge was an active accessory in causing Kalei-Imaizumi's injuries because the Ohana was hired to be an escort vessel for the race team that Kalei-Imaizumi was a part of, and Kalei-Imaizumi had to be aboard the Ohana as part of her duties with her team's switch crew. Second, there was no independent act breaking the causal link between the event and Kalei-Imaizumi's injuries. Stevens's hat blowing into the water and Kalei-Imaizumi reentering the water to retrieve the hat did not break this causal link because, as discussed supra in the MAMGA analysis, the reason why Kalei-Imaizumi reentered the water is irrelevant because Kalei-Imaizumi needed to reboard the Ohana in order to compete in the 2016 Pailolo Challenge. Even if this Court is required to consider the reason why Kalei-Imaizumi reentered the water, her decision to retrieve the hat did not break the causal link because it was foreseeable. In an open ocean canoe race utilizing escort boats, it is foreseeable that: an item in a vessel may fall off into the water; someone on the vessel may enter the water to retrieve the item; and the person would have to reboard the vessel after retrieving the item. Third, Kalei-Imaizumi's injuries resulted from the event's intended purpose. The Ohana was a race escort vessel and one of its duties was to transport the Kalei-Imaizumi's switch crew. In order to be transported by the Ohana, Kalei-Imaizumi had to get in and out of the vessel. Cf. Oahu Transit, 107 Hawai'i at 237, 112 P.3d at 723 (2005). Applying the Oahu Transit factors, Kalei-Imaizumi's injuries arose out of the 2016 Pailolo Challenge, which this Court has previously found was an event managed or operated by HCC. Therefore, even if the Hawai'i Supreme Court held that the Oahu Transit analysis applies to insurance provisions like the Events Exclusion in this case, the Events Exclusion would still preclude coverage for the claims against HCC arising from Kalei-Imaizumi's injuries.
3. Ruling
There are no genuine issues of material fact, and it is impossible for the Underlying Plaintiffs to prevail on a claim against HCC that is covered by the Policy because either the Watercraft Exclusion or the Events Exclusion applies. Therefore, as a matter of law, Great Divide does not have a duty to defend HCC. Because the duty to defend is broader than the duty to indemnify, the absence of a duty to defend also means Great Divide does not have a duty to indemnify HCC. Summary judgment is granted to Great Divide as to these issues.
CONCLUSION
On the basis of the foregoing, Great Divide's Motion for Summary Judgment, filed November 8, 2018, is HEREBY GRANTED and this Court CONCLUDES that Great Divide does not have a duty to defend, nor a duty to indemnify, Defendants. In light of these rulings, the Club Defendants' Counter Motion for Partial Summary Judgment Re: Duty to Defend and Stevens's joinder of simple agreement in the Countermotion, both filed on December 28, 2018, are HEREBY DENIED.
There being no remaining issues in this case regarding Great Divide's Complaint for Declaratory Judgment, filed April 17, 2018, the Clerk's Office is DIRECTED to terminate the parties to the Complaint on *828 April 3, 2019 , unless a timely motion for reconsideration of this Order is filed. A separate order will be issued regarding the cross-claim in this case.
IT IS SO ORDERED.

The citations to the Countermotion CSOF referring to page numbers describe the Club Defendants' responses to the Motion CSOF, and the citations to the Countermotion CSOF referring to paragraph numbers describe the additional statements of fact that the Club Defendants offer in support of their request for summary judgment.

On January 7, 2019, Great Divide filed an errata to the Reply CSOF to correct a spelling error in the Reply CSOF. [Dkt. no. 55.]

The Club Defendants do not dispute the authenticity of Exhibit B. See, e.g., Countermotion CSOF at ¶ 1 (citing Great Divide's Exhibit B as evidentiary support).

The Policy consists of multiple parts that are not consecutively paginated. All citations to the Policy refer to the page numbers assigned to Exhibit B by this district court's electronic filing system.

This refers to the second of two paragraphs both numbered "3" in the Countermotion CSOF.

The other subsections of § II.1 address an insured that is: an individual; a partnership or joint venture; a limited liability company; or a trust. [Policy at 19, § II.1.a-c, e.]

Although Great Divide also invoked the Declaratory Judgment Act as a basis for jurisdiction, [Complaint at ¶ 7,] " '[t]he operation of the Declaratory Judgment Act is procedural only' and does not confer arising under jurisdiction." See Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund, 636 F.3d 538, 543 (9th Cir. 2011) (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) ).

The Court notes that United States Fire Insurance Co. v. Hawaiian Canoe Racing Ass'ns, et al., CV 18-00212 LEK-RLP ("US Fire"), arises from a coverage dispute concerning whether the Club Defendants and Stevens are covered under another policy for the claims in the Underlying Action. US Fire alleged HCC and KCC are both members clubs of Maui County Hawaiian Canoe Association, which is one of HCRA's Island Associations. [US Fire, Complaint for Declaratory Judgment, filed 6/4/18 (dkt. no. 1), at ¶¶ 3-4.] However, the Club Defendants stated they were unable to admit or deny those allegations because they are vague. [Id., Club Defs.' answer to US Fire's complaint, filed 7/24/18 (dkt. no. 17), at ¶¶ 3-4.] Even if HCC and KCC are members of HCRA, that does not render KCC and HCRA members of HCC.

Subsequent developments in the Underlying Action have supported this allegation, showing that Stevens was retained by Bellafiore, who was acting as an agent of KCC. See Motion CSOF at ¶ 30; Countermotion CSOF at pg. 3 & Countermotion CSOF at ¶ 14; Reply CSOF at ¶ 14.

Paragraphs 106 and 109 also allege HCRA, HCC, and/or KCC had a duty of care. [Underlying Complaint at pgs. 25-26.] In addition, paragraph 115 alleges "HCRA, HCC and/or KCC owed a duty to their members, including Faith [Kalei-Imaizumi], to provide insurance coverage with respect to an injury the member might suffer during a regatta or long distance race." [Id. at pg. 27.] This Court's analysis of the use of "or" in paragraph 102 also applies to these paragraphs.

The Events Exclusion in this case - which excludes coverage for, inter alia , " 'bodily injury' ... arising out of any 'event' " - is broader than the exclusion in Westville Riding- which refered to practice for, or participation in, an event and MAMGA, discussed infra. However, the analysis in those cases is applicable to the instant case because Kalei-Imaizumi was a participant in the 2016 Pailolo Challenge. This Court does not reach the issue of whether the Westville Riding and MAMGA analyses would apply to the Events Exclusion in Great Divide's Policy if the underlying action involved injuries sustained by someone who was not a participant in the 2016 Pailolo Challenge.

The events exclusion in Westville Riding required sponsorship. See 82 F.Supp.2d at 1255. However, the Events Exclusion in the instant case only requires that the insured "manage[ ], operate[ ] or sponsor[ ]" the event, see Policy at 45, and this Court has found that HCC managed or operated the 2016 Pailolo Challenge. See supra Discussion § III.B.1.

The fact that the Oahu Transit analysis would need to be modified to be applied in a case involving an events exclusion supports this Court's conclusion that the analysis is an unsuitable mismatch for this type of case.